HOUSTON OIL COMPANY OF TEXAS ET AL. v. WALTER E. KIMBALL ET AL.

No. 1984.    Decided December 1, 1909, January 19, 1910.

**1.—Unrecorded Deed—Innocent Purchaser—Burden of Proof.**

Under the law in force in 1838 (Hartley's Digest, art. 2757, Act of December 20, 1836) the burden is upon those claiming under a deed, unrecorded at the time of a subsequent conveyance by their grantor to another, to show that such subsequent purchaser had notice of their deed when he bought or that he did not pay a valuable consideration for the land. Kimball v. Houston Oil Company, 100 Texas, 336, reaffirmed. (P. 101).

**2.—Evidence—Deed—Affidavit of Forgery.**

A certified copy of a recorded deed was properly admitted in evidence without proof of its execution, that being prima facie established, though the adverse party had filed an affidavit of forgery, where he did not call such affidavit to the attention of the court when the deed was offered nor object to its admissibility for want of proof of the execution of the original, though objecting on the ground that it did not identify the land. (Pp. 101, 102).

**3.—Same—Burden of Proof.**

The admission in evidence of a recorded deed without proof of its execution does not preclude the adverse party from proving that it was forged.   (P. 102).

**4.—Same—Forgery of Deed—Sufficiency of Evidence.**

Evidence considered and held insufficient to raise the issue of forgery of a recorded deed admitted in evidence or to require the question of its execution to be submitted, such evidence consisting of an absence of claim by the grantee during a short period only and the addition to his general warranty on conveying the land of a special warranty against any incumbrance to the title appearing on record.   (Pp. 102, 103).

**5.—Same—Nonclaim.**

Proof that those holding a recorded conveyance to land had made no other claim to title for a long period was no evidence of a forgery of the title by their grantor.   (P. 103).

**6.—Practice on Appeal—Error Apparent on Face of Record.**

The only error which can be cause for reversal is one which can be ascertained by examination of the record.   The error "apparent on the face of the record" which may be made ground for reversal, although not assigned, must be a fundamental one, such as, being readily seen, lies at the base and foundation of the proceeding and affects the judgment necessarily.   (Pp. 103, 104).

**7.—Limitation—Charge.**

Where defendants, in an action for land, pleaded the statutes of limitation of three, five and ten years, a submission to the jury of the issue of title under the statute relating to possession for three years only was a withdrawal of the issues as to five and ten years possession; but where such charge assumed that the title of defendant was sufficient to sustain the three years limitation, defendant could not be prejudiced by the exclusion of the issues as to possession for a longer period.   (Pp. 104, 105).

**8.—Limitation—Possession by Tenant.**

Where there was neither pleading nor evidence to support limitation as to particular tracts out of a large survey occupied by tenants of defendant nor any evidence that any tenant holding under them claimed possession of the entire survey, there was no error in failing to submit the issue as to limitation in favor of defendants by virtue of the possession held by their tenants.   (Pp. 105, 106).

**9.—Same.**

Evidence of possession of land by tenants under defendant's grantor examined and held insufficient to support a claim of limitation based thereon or require a submission of the issue of defendant's title by limitation through possession by their grantor.   (Pp. 105, 106).

**10.—Deed—Description.**

Where a deed, in addition to its description of the land conveyed, referred to the original grant thereof and to the original plat and field notes in the General Land Office for a more particular description, it was sufficient to identify the land conveyed if the same was described with certainty in the original grant and field notes referred to.   (Pp. 106, 107).

**11.—Title to Land—Failure to Claim—Evidence.**

Where long failure or claim to assert title to land becomes an issue in the case, testimony by the children of one holding such title of his declarations with regard to ownership and of memoranda among his papers relating thereto, was admissible in evidence.   (P. 107).

**12.—New Trial—Newly Discovered Evidence—Diligence.**

Where an affidavit as to newly discovered evidence made the ground for seeking a new trial, was filed with unnecessary delay, on the day preceding the

adjournment of the term, and so late as to afford no time to contest its truth, it was properly overruled, and in the absence of a showing as to the grounds on which the court acted, it may be presumed that it overruled the motion because filed too late. (Pp. 107, 108).

### 13.—Evidence—Character.

Evidence of the high standing and character of a lawyer, a remote grantor, once holding the title claimed by defendant, was not admissible to support the genuineness of that title or raise a presumption against that adversely claimed. (P. 108).

### 14.—Record of Title—Innocent Purchaser.

A purchaser of land is required to look only for conveyances made prior to his purchase by his immediate vendor or by any remote vendor through whom he derives his title. It is immaterial to the title derived by an innocent purchaser, as against a prior purchaser whose deed from the vendor was unrecorded, whether or when the deed of the second purchaser was placed on record. If the description contained in the recorded deed to the second purchaser is insufficient to identify the land, the title of the first purchaser and those holding under him would prevail because of his better right by conveyance. No issue of insufficient record of title or notice of the title of the second purchaser or those holding under him by reason of the insufficiency of the description in his deed would be involved. (Pp. 108, 109).

### 15.—Deed—Recitals.

The refusal to exclude a recital of a former conveyance in a deed offered in evidence was not erroneous where the recital was merely descriptive of the land sold, furnishing data by which it could be identified. (P. 109).

### 16.—Acknowledgment—Certificate—Judge of Court of Record—Validating Act.

An acknowledgment of a conveyance of land in Texas before a judge of the Supreme Court of Louisiana in 1845, was attested by the signature of the judge without a seal, his official character and the genuineness of the signature being attested by the certificate of a consular agent for the Republic of Texas for the port of New Orleans. Held, that if such acknowledgment and attestation by a consular agent was unauthorized, the defect in the acknowledgment was cured by the Act of 1871, Paschals Digest, art. 1718, authorizing the taking of acknowledgments before a judge of a court of record having a seal, and the Act of April 22, 1874, validating the acknowledgment of recorded instruments where same had been taken in accordance with the law in force at the time of the passage of such validating Act, it would be presumed that the Supreme Court of Louisiana was a court of record and had a seal. (Pp. 109-111).

Error to the Court of Civil Appeals for the Fourth District in an appeal from Hardin County.

Kimball and others sued the oil company and others for the recovery of land, and obtained judgment. This was affirmed on appeal by defendants, who thereupon obtained writ of error.

*Denman, Franklin & McGown, Lanier & Martin,* and *Taliaferro & Nall,* for plaintiff in error.—The trial court erred in its charge to the jury in instructing them to "find for the plaintiffs for the land described in their petition," unless they should find for the plaintiffs upon the defense of three years limitations, which said error of the trial court is hereby charged and assigned as being "an error in law . . . apparent on the face of the record," for which they respectfully ask a reversal of the judgment below and a remanding of the cause for a new trial. Rev. Stats., art. 1014; Wilson v. Johnson, 94 Texas, 272; Fuqua v. Pabst Brewing Co., 90 Texas, 298; Hardin

v. Abbey, 57 Texas, 582; Harris v. Petty, 66 Texas, 515; Scalfi & Co. v. State, 95 Texas, 559.

The question whether the deed from Nelson to Parmer was a forgery and whether Parmer was a purchaser for value and without notice of prior conveyance from Nelson to Brown were material questions in this case. These questions were not submitted to the jury by the court in its charge. There was evidence introduced at the trial upon these questions and they should have been submitted to the jury. Kimball v. Houston Oil Company, 100 Texas, 336, and cases therein cited.

In view of the facts of this case, assuming for the purposes of argument that under the Act of 1836, as construed by the Supreme Court, the burden of proof on the question of innocent purchaser was on the defendants claiming under the prior deed from Nelson to Brown, nevertheless this burden was complied with whenever the evidence showed a reasonable probability that Parmer was not an innocent purchaser, and that such reasonable probability best explained the conduct of the parties with reference to the land in controversy, and it was error for the court to refuse the requested instruction. Fletcher v. Fuller, 120 U. S., 534; Fuller v. Fletcher, 44 Fed. Rep., 34; United States v. Deveraux, 90 Fed., 187; Texas Tram & Lumber Co. v. Guin, 52 S. W., 110; Grayson v. Lofland, 21 Texas Civ. App., 503; Bringhurst v. Texas Co., 39 Texas Civ. App., 500; Arthur v. Ridge, 40 Texas Civ. App., 137; Daily v. Starr, 26 Texas, 562; Garner v. Lasker, 71 Texas, 435; McDow v. Rabb, 56 Texas, 158; Johnson v. Shaw, 41 Texas, 432; Johnson v. Timmons, 50 Texas, 531; Hooper v. Hall, 35 Texas, 87; Ballard v. Perry, 28 Texas, 366; Herndon v. Burnett, 21 Texas Civ. App., 25; Jones v. Reus, 5 Texas Civ. App., 628; Bounds v. Little, 75 Texas, 320; Ammons v. Dwyer, 78 Texas, 639; Manchaca v. Field, 62 Texas, 141; Baylor v. Tillebach, 20 Texas Civ. App., 490; Crain v. Huntington, 81 Texas, 614; Johnson v. Lyford, 9 Texas Civ. App., 85; Smith v. Swan, 2 Texas Civ. App., 563; Harris v. Nations, 79 Texas, 411; Baldwin v. Roberts, 13 Texas Civ. App., 563; Dunn v. Eaton (Tenn.), 23 S. W., 163; Daniels v. Creekmore, 7 Texas Civ. App., 577.

The description in the deed being insufficient to describe the land, the record of same was no notice to a subsequent purchaser. The undisputed evidence showed that both the Texas Pine Land Association and the Houston Oil Company, who held title under said Association, were innocent purchasers for value unless they were charged with constructive notice by the record of the deed. McLouth v. Hurt, 51 Texas, 120; Gulf, C. & S. F. v. Gill, 86 Texas, 284; Frost v. Beekman, 1 Johns. Chan., 288; Laughlin v. Tips, 8 Texas Civ. App., 653; Pringle v. Dunn, 37 Wis., 465; Shepherd v. Burkhalter, 13 Ga., 443; Brown v. Kirkman, 1 Ohio St., 116; Stevens v. Hampton, 46 Mo., 404; Bishop v. Schneider, 46 Mo., 472; Terrel v. Andrew, 44 Mo., 309; Barnard v. Campau, 29 Mich., 164; N. Y. Life Insurance Co. v. White, 17 N. Y., 469; Heister v. Fortner, 2 Binn., 40; Sanger v. Craigue, 10 Vt., 555; Jenning v. Wood, 20 Ohio, 261; Miller v. Bradford, 12 Iowa, 14; Barrows v. Baughman, 9 Mich., 213;

Neyland v. Texas Y. P. etc. Co., 26 Texas Civ. App., 417; Graham v. Hawkins, 1 Texas U. C., 519; Cook v. Bremond, 27 Texas, 457.

The evidence showed such possession by defendant and those under whom it claimed of the land in controversy as to establish title in defendant by the three, five and ten years statute of limitations. Cobb v. Robertson, 99 Texas, 138; Gunter v. Meade, 78 Texas, 634; Moore v. McGowen, 20 S. W., 112; Williams v. Rand, 9 Texas Civ. App., 631; Kimbro v. Hamilton, 28 Texas, 565; City El Paso v. Bank, 96 Texas, 496.

The officer taking the acknowledgment not being one authorized to take same under the Act of 1841, the deed was not admissible to record under that Act, and no proof being made that he was the judge of a court of record having a seal, the instrument was not such as could be recorded under the Act of 1846. The certified copy therefore of an improperly recorded instrument was not admissible in evidence. Act of Feb. 5, 1841, Pasch. Dig., art. 4978; Texas Land Co. v. Williams, 51 Texas, 59; 7 Am. & Eng. Cyc. of Law (2d ed.), 7; Pasch. Dig., p. 5011, Act of 1846; Rev. Stats., art. 4615; Houk on Written Instruments, 303.

The recitals in the deed were inadmissible because said statement is self serving and only binding upon the parties claiming under the deed, and defendants do not claim thereunder and are not in privity with nor parties to it. Illg v. Garcia, 92 Texas, 251; Byers Bros. v. Wallace, 87 Texas, 503.

The testimony of the witness as to what was stated to her by her father was hearsay. Byers Bros. v. Wallace, 87 Texas, 503.

The court erred in refusing to allow defendants to prove by the witness Work the character and standing of Judge George F. Moore and that he was a lawyer of high standing and served for a number of years on the Supreme Bench of the State of Texas, said Moore being one of defendant's remote grantors, and asserted ownership over and paid taxes on the land in suit for many years, all of which is more fully shown by defendants' bill of exception No. 8, here referred to. The testimony referred to was admissible as tending to show the improbability of one of the owners of the land under whom defendants claim asserting title to property to which he had no title, and the strong probability that there were facts then susceptible of direct proof showing that the deed from Nelson to Parmer was a forgery or that Parmer was not a purchaser for value without notice.

The newly discovered evidence was material, was newly discovered, due diligence had been exercised to procure same at the trial, and same could not be procured at the trial, and all of these facts were made known to the court in the motion for a new trial by proper affidavit, and the motion should have been granted and the case continued in order to give the defendants an opportunity to procure the testimony to establish those facts. Houston & T. C. Ry. Co. v. Forsythe, 49 Texas, 178.

*Presley K. Ewing (J. D. Martin, E. E. Easterling, S. M. Johnson and W. D. Gordon,* of counsel), for defendants in error.—It is plain,

too plain for doubt, that the implied exclusion by the trial court of a controverted issue of fact, one that the jury might decide either way, can not be the error in law apparent upon the face of the record, within the meaning of the statute to which we have referred, for the very reason that it can not be said to settle the right of the case, in whole or part, as matter of law, when the jury might have found the controverted issue either way. The authorities to that precise effect are numerous. Clapp v. Royers, 28 Texas Civ. App., 29; Western Union Tel. Co. v. Hays, 29 Texas Civ. App., 25; International L. & P. Co. v. Maxwell, 27 Texas Civ. App., 294; Burge v. Beaumont Carriage Co., 47 Texas Civ. App., 223; Carrera v. Dibrell, 42 Texas Civ. App., 99; First National Bank of El Paso v. Moor, 34 Texas Civ. App., 476; Metcalfe v. Lowenstein, 35 Texas Civ. App., 619; Neyland v. Bendy, 69 Texas, 711, 714.

The question as to burden of proof of notice and payment was the precise one adjudicated by the Supreme Court on the former appeal, and it is elementary that the burden of proof, once fixed in such a case, never shifts. Kimball v. Houston Oil Co., 100 Texas, 336; Clark v. Hills, 67 Texas, 141.

No issue as to forgery of the deed arose, and the trial court was right in refusing to submit it. Joske v. Irvine, 91 Texas, 574; Williamson v. Work, 33 Texas Civ. App., 369, and cases cited; Cox v. Cock, 59 Texas, 521, 524; Ehrenberg v. Baker, 54 S. W., 435, 437; Trinity Co. Lumber Co. v. Pinckard, 4 Texas Civ. App., 671, 676; Holmes v. Coryell, 58 Texas, 689; Robertson v. Dubose, 76 Texas, 1; Herndon v. Vick, 18 Texas Civ. App., 583, 587.

That the description in a deed is not void where its contents might furnish the means of identification, see Gresham v. Chambers, 80 Texas, 544, 549; Overand v. Menczer, 83 Texas, 123, 127; Kingston v. Pickins, 46 Texas, 99, 101; Wilson v. Smith, 50 Texas, 365, 369; Hermann v. Likens, 90 Texas, 448, 453-455; Giddings v. Day, 84 Texas, 605, 608.

That the registration statutes apply, not to prior purchasers, but to subsequent purchasers only, see White v. MacGregor, 92 Texas, 556; Neyland v. Texas Yellow Pine Lumber Co., 26 Texas Civ. App., 417.

That a tenancy from squatters restricted to the small parcels of their occupancy out of a league can confer title by limitation only to such parcels, see Texas Land Co. v. Williams, 51 Texas, 52-61; Read v. Allen, 63 Texas, 155, 158; Craig v. Cartwright, 65 Texas, 424; Hall v. Clountz, 26 Texas Civ. App., 348. See, also, Desmuke v. Houston, infra.

That where descriptions identifying such parcels are not furnished by either plea or proof at the trial, there can be no recovery by limitation even as to the parcels, see Giddings v. Fischer, 97 Texas, 184, 188-190; Desmuke v. Houston, 31 S. W., 198; s. c., affirmed, 89 Texas, 10.

That in order for successive occupancies to avail for limitation, the essential privity of estate with the claimant must have existed, see Sayles' Tex. Civ. Stats., art. 3350; Johnson v. Nash, 15 Texas, 422; Brownson v. Scanlan, 59 Texas, 222, 228; Wheeler v. Moody, 9

Texas, 372, 378; Collier v. Couts, 92 Texas, 238-239; Truehart v. McMichael, 46 Texas, 222, 228; 1 Cyc., 1000, 1001.

That the requisite adverse possession, with cultivation, use or enjoyment, was not held by tenants of anyone under whom defendants deraign, continuously for the length of time required for limitation, see Ft. Worth & D. C. Ry. Co. v. Wooldridge, 101 Texas, 471; 18 Am. & Eng. Ency. of Law, 2d ed., 177, 180, 187, 189, 190, 404, 659; Sayles' Tex. Civ. Stats., art. 3348; Fitch v. Boyer, 51 Texas, 349, 350; 1 Am. & Eng. Ency. of Law (2d ed.), 834, 835; Satterwhite v. Rosser, 61 Texas, 166.

That the registry act in question authorized an acknowledgment, in Louisiana, before a judge of a superior court of record, certified by a consul or minister of the Republic of Texas resident there, see Hartley's Dig., art. 2777; Paschal's Dig., art. 4978; Hill v. Taylor, 77 Texas, 295, 298, 299. That the consular agent who acted under the seal of the consulate was in legal effect a deputy, see Act, Dec. 18, 1837, Gammell's Laws, vol. 1, p. 1433, and Schunior v. Russell, 83 Texas, 83, 89. That where the principal officer is authorized to to take acknowledgments, his deputy may also take such, either in the principal's or his own name, see 1 Am. & Eng. Ency. of Law, 2d ed., pp. 496, 497, citing, among cases from Texas and other States, Herndon v. Reed, 82 Texas, 647; Ballard v. Carmichael, 83 Texas, 355; Wert v. Schneider, 64 Texas, 330; Thompson v. Johnson, 84 Texas, 548.

The challenged recital in the deed, being a part of the description of the land conveyed, and an inseparable part of the deed, was plainly admissible, but, if not, its admission was without prejudice. Southern Pac. Co. v. Choer, 114 Fed., 467.

That the recital was at least competent in part, so that objection to the whole of it was properly overruled, see Galveston, H. & S. A. Ry. Co. v. Gormley, 91 Texas, 394, 401; Jamison v. Dooley, 98 Texas, 206, 210; Tuttle v. Moody, 100 Texas, 240; Railway v. Tullis, 91 S. W., 317; Pecos & N. T. Ry. Co. v. Evans-Snider-Buel Co., 42 Texas Civ. App., 60, 100 Texas, 190.

That the proposed testimony of the general reputation or character of George F. Moore was legally irrelevant and incompetent for any purpose, and a fortiori for the specific purpose for which offered, see Rankin v. Busby, 25 S. W., 678; Redus v. Burnett, 59 Texas, 576; Roach v. Crume, 41 S. W., 86; Gillett's Coll., Ev., sec. 297.

That the motion, on the ground of newly discovered evidence, was properly denied because not seasonably presented, being on the eve of adjournment and without any showing of diligence as to why it was not presented earlier, see Texas & N. O. Ry. Co. v. Scarbrough, 101 Texas, 436.

Mr. Justice Brown delivered the opinion of the court.

Walter E. Kimball and others instituted this suit in the District Court of Hardin County against the Houston Oil Company of Texas and others, to recover a league of land granted by the Government of Coahuila and Texas to O. C. Nelson and located in said county. The plaintiffs' petition contained the usual allegations of trespass

to try title, which was answered by the defendants by a plea of not guilty and the statutes of limitation of three, five and ten years, to which plaintiffs replied by a general denial and disability of some of the plaintiffs.

Briefly stated, the following are the principal facts of this case: O. C. Nelson, from whom both parties claimed, owned the land in controversy, and by a deed duly executed on the 28th day of November, 1837, conveyed the entire tract to David Brown, which deed was not recorded until the 16th day of March, 1842. On the 13th day of March, 1838, O. C. Nelson executed and delivered to Isom Parmer a deed conveying to him the same tract of land. This deed was recorded in the proper county on the 23d day of February, 1842. Payment of the consideration was acknowledged in each of said deeds.

Plaintiffs in the court below, had a consecutive chain of transfers from Isom Parmer to their father, and defendants had such transfers from David Brown down to the Houston Oil Company of Texas. The foregoing statement presents the case in its general outline, and such other facts as may be relevant to questions raised by assignments of error will be discussed and stated in connection therewith.

Plaintiffs in error request that this court again consider the point decided on certified question, now contending, as before, that the burden was upon the plaintiffs to prove that Parmer paid a valuable consideration to Nelson and did not have notice of the deed from Nelson to Brown. We are of opinion that the decision of this court in Kimball v. Houston Oil Company, 100 Texas, 336, is a correct interpretation of article 2757 (Hartley's Digest) being an Act of 1836 which was in force when the deeds from Nelson to Brown and from Nelson to Parmer were made. The first deed being unrecorded when the second was executed, the deed to Parmer conveyed the title unless those who claimed under the deed to Brown should prove that Parmer had notice of the deed to Brown when he bought, or that he did not pay a valuable consideration for the land.

The first assignment of error presented by the application reads as follows:

"The court erred in refusing to give to the jury special charge No. 1 requested by the defendants, which is as follows: 'Should you believe from the evidence herein that the deed from O. C. Nelson to Isom Parmer introduced in evidence herein was not executed and delivered by said O. C. Nelson, but that the said deed was a forgery, then you will find for the defendants herein.'"

Under that assignment the plaintiffs in error present this proposition: "Whether the deed referred to in the above requested charge was a forgery, was an issue made by the pleadings in the case and there was evidence tending to establish said issue, and it was error to refuse the requested instruction."

There appears in the record an affidavit by Alvan Jones in which he makes the statutory oath of a belief that the deed from O. C. Nelson to Isom Parmer was a forgery. When the certified copy of that deed was offered in evidence defendants below made these objections to its admissibility: "We object to this instrument because it does not describe the land sued for in this suit, nor any other land.

That the deed is ambiguous and has no calls in it by which the land can be identified on the ground. That it conveys no land in any manner on account of its uncertainty of description, and does not mention this league of land, nor does it say in what county or State the land is located; nor does it refer to any other data by which it can be identified. That there are no allegations in the petition by which the patent and latent ambiguities can be explained." Defendant also offered to prove by expert surveyors that they could not from the field notes in the deed identify the land on the ground and in connection with their objection they offered an original grant to James Rafferty for 4428 acres, as a colonist in the same colony, on the Neches River and bearing date the same as the O. C. Nelson survey and issued by the same Commissioner. The defendants did not call the affidavit of forgery to the attention of the court, nor did they object to the admissibility of the copy of the deed for want of proof of the execution of the original. Neither did they object to the admissibility of the certified copy because the loss of the original had not been proved nor its absence accounted for. Neither did they make the objection that the certified copy had not been filed among the papers for three days prior to the commencement of the trial and notice thereof given to the opposite party. Under this condition of the record we hold that the certified copy was properly admitted and was *prima facie* evidence before the jury of the execution by O. C. Nelson of the deed to Parmer. (Art. 2312, Rev. Stat.; Hancock v. Tram Lumber Co., 65 Texas, 225.) It is true that notwithstanding the failure to make the objections stated, the defendants had the right to disprove the fact of execution of the deed and thus overthrow the *prima facie* case of the plaintiffs.

If there was before the jury evidence sufficient to justify a finding that the deed from Nelson to Parmer for the land in controversy was a forgery the refusal of the court to give the charge was error and the judgment should be reversed. The plaintiffs in error do not point out any specific evidence which tends to prove the forgery of the deed but rely upon circumstances as tending to establish that fact. It is undoubtedly true that forgery might be proved by circumstances, if sufficient to satisfy the mind of the jury of that fact, but the only circumstances called to the attention of the court on the subject are that Parmer and those who claim under him have not claimed the land openly for a great number of years and that Parmer had in making his sales to Barnes introduced a warranty which the plaintiffs claimed furnishes sufficient ground of suspicion to justify a finding by the jury that the deed was not executed by Nelson. The facts shown by the record are that Parmer's deed was made in 1838 and was placed upon the records of Menard County in 1842, before the deed from Nelson to Brown was recorded. In 1845 Parmer sold the land to one Barnes in the city of New Orleans, Louisiana, and conveyed it to him by deed which contained the usual clause of general warranty and, in addition thereto, the following: "And I do moreover bind myself, my heirs, executors and administrators to return the purchase money if it shall of record in the said Republic of Texas appear that the above described land is in any way encum-

bered to the prejudice of this sale." It can not be urged with any consistency that the length of time which transpired between the conveyance to Parmer and the time of his selling the land constituted such nonclaim as would justify any presumption against the validity of his title. It is, however, pressed upon the court that the clause, above copied, which was inserted in the deed, manifests a distrust of his title on the part of Parmer, and therefore is a circumstance which would justify a jury in concluding that the instrument was probably a forgery. At the time that Parmer made the deed to Barnes, the deed from O. C. Nelson to Brown had been put upon the record, and if he knew that fact and desired to sell the land because the title was bad he would not probably have given the additional warranty that the record did not show any adverse claim whereby his vendee would have the right to an immediate return of the purchase money without waiting for an eviction. He gave a general warranty such as a vendor selling in good faith would have given and, in addition, that copied above which tends to show that he did not know of the prior conveyance to Brown. We are not able to see in this clause any evidence of a distrust on the part of Parmer of the title that he was conveying, much less does it tend to prove that Parmer knew that the deed to him was a forgery and was therefore endeavoring to part with his title.

The long continued nonclaim on the part of Barnes and Kimball are urged also as circumstances from which the fact of forgery might be presumed, but we deem it unnecessary to argue that proposition, for surely counsel would not contend that the action or nonaction of persons who had no part in the execution of the instrument could be taken as evidence of the fact that Parmer had committed a forgery in securing the deed from Nelson. We are of opinion that there was no evidence before the jury which would justify the court in giving the charge requested.

The plaintiffs in error filed in the Court of Civil Appeals an additional assignment of error as follows:

"The trial court erred in its charge to the jury in instructing them to find for the plaintiffs for the land described in their petition, unless they should find for the defendants upon the defence of three years limitation, which said error of the trial court is hereby charged and assigned as being an error in law apparent on the face of the record, for which they respectfully ask a reversal of the judgment below and the remanding of the cause for a new trial."

Under this assignment of error is also presented a number of propositions which are denominated assignments but which depend upon the assignment and are used to point out the supposed error of the court in giving the charge complained of.

Article 1014, Revised Statutes, contains this provision: "In all cases of appeal or writ of error to the Court of Civil Appeals the trial shall be on statements of facts, . . . or on an error in law, either assigned or apparent on the face of the record." Does the assignment here presented come within the terms of the statute, that is, is it apparent upon the face of the record?

Webster defines the word, "apparent," thus: "clear, or manifest

to the understanding; plain; evident, obvious; appearing to the eye or mind." This does not mean that an error which can be ascertained by looking into the record and considering the evidence may be considered without an assignment, for that would include every error which can be considered at all. Nothing can be considered as an error which can not be made apparent by an examination of the record, therefore, the language of the statute must be given that construction which will make it consistent with its requirements in other respects. The language, "apparent upon the face of the record," indicates that it is to be seen upon looking at the face of the record, that is, the assignment itself, the fact pointed out by it must show a good and sufficient ground for the court to interfere to prevent injustice being done to one of the parties. Perhaps the best expression is that it must be a fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily. Wilson v. Johnson, 94 Texas, 272; Searcy v. Grant, 90 Texas, 97; Fuqua v. Brewing Co., 90 Texas, 298; Harris v. Petty, 66 Texas, 514.

This view of that assignment is supported by the course of the plaintiffs in error. If we take the first assignment in its terms there is not apparent upon the face of that record any one of the things, pointed out in the propositions under it. By an examination of the record it might be found that the facts existed as claimed in the propositions, but they are not manifest and not evident, not obvious, without an examination and weighing of the evidence to determine whether or not the assignment is well taken.

We are of opinion that the assignments which were made in the Court of Civil Appeals and presented here in the application can not be considered, because they do not come within the meaning of the statute that we have quoted above, and were not assigned in the District Court for presentation to the Court of Civil Appeals as required by law.

Defendants in the court below pleaded the statutes of limitation of three, five and ten years. The trial judge gave to the jury the following instruction: "If you believe from the evidence that the trustees of the Texas Pine Land Association, by their agents or employes, had peaceable and adverse possession of the league in question for three years before the institution of this suit (which was on the 19th day of October, 1901), then find for the defendants." The effect of that charge was to withdraw from the consideration of the jury the issues of five and ten years limitation; and it confined the issue to the possession by the Texas Pine Land Association, its agents, etc., and excluded the claim that tenants had so occupied the land. The charges also excluded from the consideration of the jury the issue made by the pleading that persons under whom the Pine Land Association claimed had held the land in peaceable possession sufficient time to give title under the statutes of limitation.

The charge assumed that the title of the association was sufficient to sustain the plea of three years' limitation, therefore, the plea of five and ten years' limitation became immaterial in the trial because the character of the possession which would bar the recovery was

the same under either plea, the difference in that respect being in the length of time for which the possession must be held. If therefore the defendants had not held the possession for three years, as was found by the jury, they could not have maintained limitation under either the five or ten years statute and no injury resulted from the failure to submit those issues.

It is contended that the court erred in restricting the possession of the Pine Land Association to its agents or employes, which excluded the possession of tenants who might have held under it. We find no evidence that any tenant who held directly under the Pine Land Association and who claimed to have possession of the entire league was in possession for three years before the institution of this suit. There was neither pleading nor evidence upon which a finding for the particular tracts occupied by the tenants could have been sustained, therefore, there was no error in that respect as to the tenants holding directly under the Pine Land Association.

If there was evidence before the jury upon which they would have found that any one or more of the vendors, immediate or remote, of the Land Association had held possession by one or more tenants of the league of land in such manner as to comply with the statutes of limitation, then the charge would be erroneous and would require a reversal of this judgment.

The evidence shows that Copley, who represented J P. and E. A. Irvin who severally and at different times owned the title to the league under which the defendants claim, went upon the land in about 1883 and found on the league three squatters, each of whom had a portion of the land in cultivation with improvements thereon. Two of them, Lewis and Hester, each entered into a written contract of lease, whereby each agreed to hold possession of the entire league of land for one of the Irvins, who was then claiming title, in consideration of the use of the land that each had under cultivation, the houses, etc. It appears from the evidence that Lewis had acquired possession of the portion that he was on from a man named Bush, and that afterwards, by some arrangements, the premises were restored to Bush. This is not explained by the evidence, but the proof does not establish that Bush undertook to take the place of Lewis as the tenant of the Irvins. But if we grant that such was the fact, the evidence fails to show the continued possession of persons claiming under the said Lewis and Bush, acknowledging the title of the Irvins and claiming and exercising the right of possession of the entire league in the name of the owner of the Brown title. Failing in this particular, the evidence was not sufficient to sustain limitation by the possession and tenancy of Lewis.

Hester was occupying a small portion of the land and the improvements thereon when the lease was executed and continued to do so up to his death, which was within a year from the date of the lease. A short time after his death his wife and son sold the improvements to S. A. J. Haire, who did not in any way assume the tenancy contract of Hester. The proof shows that Haire and his son together did occupy the part of the land and improvements which had been in cultivation and which had been occupied by Hester, but there was no evi-

dence that they asserted any right of possession either for themselves or for the owner of the land to any other portion of the league. No doubt it is true that Haire could not have disputed the title in the Irvins to the portion of the land which he received possession of from Hester, but this does not establish the possession by Haire, nor by his son, or those who were claiming under them, of the entire league of land in the name of the owners thereof, which is a necessary element in order to sustain the plea of limitation to the whole league. The court did not err in the charge complained of.

The plaintiffs in error present in different forms the proposition that the deed from O. C. Nelson to Isom Parmer is void because it does not sufficiently describe the land sought to be conveyed. This objection was urged when the copy of the deed was offered in evidence and is raised also by a number of assignments of error based upon charges asked by the plaintiffs in error, which were refused by the court. The description contained in the deed reads as follows: "I, O. C. Nelson, of the County of Jasper and Republic aforesaid, . . . have granted, bargained, sold, aliened and conveyed, and by these presents do grant, bargain, sell, alien and confirm in bona fide sale all that tract of land containing four thousand, four hundred and twenty-eight acres of land, commencing at post on the W. Bank of Neches. Thence W. 10,000 yds. Thence N. 2,500 yds. Thence E. 10,500 yds. Thence down said river to commencement, 11 labors arable, and 14 labors pasture land, it being the league of land granted by George A. Nixon, Commissioner of Zavalla Colony on the 18th day of August, 1835, and for a more particular description reference is here made to the original plat and field notes on file and of record in the General Land Office of this Republic." Both parties introduced the original grant, dated August 18, 1835, made by George Antonio Nixon, Commissioner of the Colony of Enterprise of Lorenzo D. Zavalla to O. C. Nelson. The field notes in this grant correspond with the field notes in the deed as above given, except that in the grant the word, "varas," is used to express the measurement instead of "yards," as it is in the deed, which is an evident mistake, and in the grant, "at the S. E. corner of a survey on the West side of the Neches River, which is the N. E. of this survey, from which an Ash 18 inches in diameter is to the North seventy degrees West at the distance of 18 varas, and a White Oak of ten inches in diameter is to the North forty-five degrees at the distance of seven and four-tenths varas." It will be seen that the only difference in the description of the deed and of the original grant is that the grant, to which reference is made by the deed, makes it more definite by describing particularly the Northeast corner of the survey by calling for bearing trees that are marked so that they can be identified. A certified copy of the original English field notes in the General Land Office was also introduced by both parties and corresponds with the description in the deed and in the grant, except that the field notes describe the corners with more accuracy and detail than was done either in the deed or the grant. The field notes and the grant, being referred to in the deed for a more particular description of the land, renders the description in the deed valid, if the description in the papers referred to is

sufficient to describe the land. The sufficiency of the original grant and the English field notes has not been questioned by the plaintiffs in error, nor, indeed, could it be; they are sufficiently certain, that is, they furnish the data from which the land could be identified upon the ground.

This question has been presented, as before stated, in a number of forms and by objections and special charges asked, etc., but this will be a sufficient answer to all of those objections upon every point, except the question as to whether the record of that deed was sufficient to put a subsequent purchaser upon notice. We reserve this for examination and discussion hereafter.

The plaintiffs in error complain of the action of the court in admitting the testimony of Alice Puig and Timothy Kimball, each of whom testified to having heard their father speak of owning lands in Texas and each testified to the finding of a certain memorandum in a trunk of the father after his death which related to the lands in Texas and to the O. C. Nelson Mexican grant, which memorandum was forwarded to their brother in Denison, Texas, and introduced in evidence on the trial of this cause. The defendants in the trial court were claiming that Kimball, by his long silence and nonaction with regard to his title, had abandoned all claim to the land and sought to use the fact as the basis upon which to rest a presumption of a transfer of his right to persons under whom the defendants claim. Upon this issue the evidence of Kimball's declarations with regard to his ownership of land in Texas was admissible to show that he had not abandoned his claim thereto.

The judgment of the trial court was entered on the 24th day of September, 1907, and the court adjourned on October 25, 1907; on the 24th day of that month, October, the defendants filed an amended motion for a new trial, in which, as a ground for granting the motion, they set up as newly discovered the evidence of a witness A. J. D. Sapp, whose affidavit was filed, in which he stated, in substance, that he was 87 years old, that he was acquainted with Isom Parmer in 1839, 1840 and for a number of years afterwards, and that Isom Parmer had the reputation of being a forger of land titles and dealer in fraudulent land titles, and stated that at the date of the affidavit the witness resided in Jasper County some distance from the place of trial, that he was requested to attend the trial at Koontz, but on account of the distance he lived from the postoffice the letter did not reach him in time for him to attend the trial.

The affidavit of W. G. Taliaferro was attached to the motion, who swore that the defendants did not know of the testimony of Sapp as to the reputation of Isom Parmer as a forger of land titles, nor as to his financial condition in 1839 until after the trial of the case. He also stated that the records of Menard County show that on the same day the deed from Nelson to Isom Parmer was recorded there were also recorded about a dozen other deeds from original grantees of land to the said Parmer for large tracts of land in Menard County, reciting cash consideration from eight hundred to two thousand dollars. The application for a new trial does not show sufficient diligence to entitle the parties to a rehearing. The affidavit of Sapp

was made on the 8th day of October, 1907, but the amended motion was not filed until the 24th day of that month. The affidavit was filed so late that it did not afford time for the plaintiffs in the case to contest the truth of the same or to meet it in any way. Texas & N. O. Ry. Co. v. Scarborough, 101 Texas, 436. In the case cited this court said: "Now let us suppose that the amended motion for a new trial had been filed but a short time before the court adjourned, and before it would have adjourned by operation of law; would not the court have been justified in overruling it, because it afforded the counsel for the other side no opportunity to meet it? We think that an affirmative answer should be given to the question. There is nothing in the order overruling the motion to show upon what ground the court acted. Now, all presumptions must be indulged in favor of the court's ruling. We think, therefore, we should presume that the court overruled the motion because it was filed too late. We think a party should not only be diligent in discovering testimony, but also diligent in making use of it when discovered."

Defendants offered evidence to prove the reputation of George F. Moore, but whether it was good or bad, the evidence was irrelevant to any issue before the jury and was properly excluded.

Plaintiffs in error sought, by special charges, to have the court submit to the jury the issue that the Houston Oil Company was a purchaser for a valuable consideration without notice of the title derived through the Parmer deed, which charges were refused. To test the correctness of the ruling, we will assume that the Houston Oil Company had no actual notice of the deed made by Nelson to Parmer and that it paid a valuable consideration for the land. Let us suppose that the Parmer deed had not been placed upon record at any time. Under the law of 1837 the fact that the deed to Brown was not on record when the deed to Parmer was executed gave to the latter deed the effect of vesting the legal title to the land in Parmer, with the equity in Brown to show a superior right by proving that Parmer had notice of the prior conveyance or that he did not pay a valuable consideration for it. If Parmer had failed entirely to record his deed it would not have affected the title of Brown or of any one holding under him. No duty rested upon Parmer to record his deed as notice to the prior purchaser, Brown, nor to his vendees. Neither was it the duty of Brown nor any person purchasing from him to examine the records to see whether Nelson had conveyed the land subsequently to his deed to Brown; a purchaser is required to look only for conveyances made prior to his purchase by his immediate vendor, or by any remote vendor through whom he derives his title. White v. McGregor, 92 Texas, 558. In that case the court said: "Do the words mean all persons who purchase the land after the deed is recorded, or only those who are subsequent in the chain of title? If a grantor conveys the same property twice and the second grantee puts his deed upon record, is it notice to one who subsequently purchases from the first grantee? We think not. The record is not notice to the first grantee, for he is a prior purchaser. Nor do we think it was intended to be notice to anyone who should purchase from him. In other words, we think the subsequent purchasers who are meant

are only those the origin of whose title is subsequent to the title of the grantee in the recorded deed. . . . The object of all the registry acts, however expressed, is the same. They were intended to affect with notice such persons only· as have reason to apprehend some transfer or incumbrance prior to their own, because none arising afterwards can, in its own nature, affect them. And after they have once, on a search instituted upon this principle, secured themselves against the imputation of notice, it follows that every one coming into their place, by title derived from them, may insist on the same principle in respect to himself. It is a general rule that when once a man has granted away his right, anything which he can do or say shall never be received to affect another claiming under him". There being no duty resting upon Parmer to record his deed to give notice to Brown, or his vendees, nor upon Brown, or his vendees, to examine the record for the subsequent conveyance by Nelson to Parmer or his vendees, the doctrine of innocent purchaser has no application in this case. If the description of the land in the deed to Parmer were insufficient to pass the title to him, then the superior title would have remained in Brown, because a deed which passed no title could not have any effect under the law of 1837. We conclude that it is not a question of notice, but a question of title that is involved and, as we have said before, the description in the deed from Nelson to Parmer was sufficient to convey the title, because it gave data from which the land could be identified, and the superior title having passed out of Nelson to Parmer, those persons who claim under the deed made by Nelson to Brown "stand in the shoes of the latter." The facts of this case did not call for nor justify the submission to the jury of the issue of innocent purchaser, and the court did not err in refusing to give the special charges requested by the plaintiffs in error.

The defendants in the court below objected to the introduction of a certified copy from the records of Hardin County of the deed from Isom Parmer to Jose Barnes, whereby the land in controversy was conveyed to the latter. (1) Because "the law in force at the time of the execution of this deed provided that all foreign acknowledgments, when taken before a judge of a court of record, should be certified to by one of two officers; either a resident minister, or a consul of the Republic of Texas." It was objected that the consular agent was not authorized by the statute to make the certificate of the official character of a judge who took the acknowledgment. (2) The defendants objected to this recital contained in the said copy: "And in which grant said land is more fully described and was acquired by me by deed from O. C. Nelson, 13th March, 1838, which is also herewith delivered duly recorded." The last objection could not be sustained, for the recital was merely descriptive of the land sold, furnishing data by which it could be identified. It is not necessary for us to determine whether the consular agent had authority to make the certificate of official character or not, because if it should be held that he had no such authority, the defect was cured by subsequent legislation. We do not intimate that the consular agent had no such authority, but simply decline to discuss the question because *it is im-material in the present case.*

In 1871 the Legislature enacted a statute upon the subject of registration of instruments of this character, designating the officers before whom the acknowledgment or proof of the execution of such instruments might be made, from which we copy as follows: "Proof or acknowledgment of every instrument of writing for record may be taken before some one of the following officers: . . . When acknowledged or proven without the State, and within the United States or their territories, before some notary public, commissioner of deeds for this State, or before some judge or clerk of a court of record having a seal." (2 Pas. Dig., art. 7418.) On the 27th day of April, 1874, the law as above quoted was in effect in this State, when the Legislature enacted another statute from which we quote as follows:

"Every grant, deed, mortgage, power of attorney, or other instrument of writing for the conveyance of real or personal estate, required or permitted by law to be registered, that shall have been heretofore acknowledged or proven in the manner prescribed by law, without the State and within the United States and their territories, before any one of the officers in such cases now authorized by law to take such acknowledgments or proofs, and which shall have been duly certified by such officer, shall be held to be duly acknowledged or proven with the full effects and consequences of existing laws; and any such instrument, which shall have been so acknowledged or proven before either of such officers, and which shall have been heretofore registered, shall be held to be duly registered with like full effects and consequences of existing laws: Provided, however, that this Act shall not be so construed as to give it any retroactive operation, or to affect any right acquired prior to its passage."

From the known jurisdiction and powers of courts of last resort and in conformity to the laws of this State we presume that the Supreme Court of the State of Louisiana is a court of record, and, being a court of record, that it has a seal, because it is so uniformly the case that courts of record have seals as to raise a presumption to that effect. A seal is not necessary to a court of record, but to use the term, "court of record," implies that it has a seal. Ingoldsby v. Juan, 12 Cal., 580; 11 Cyc., 658; Blethen v. Bonner, 93 Texas, 141.

In the first case above cited the Supreme Court of California said: "It is next objected that Tracy, the clerk of Santa Clara, had no power to take the acknowledgment, because he had no seal of office. But this construction of the statute is too narrow. The court of which he was clerk, was entitled to a seal. This general phrase, "having a seal," was only intended to denote a court of record, which is defined to be a court having a seal. The power of the clerk was never intended to be made to depend upon the fact of his having procured this article, or the care with which he preserved it."

On the 27th day of April, 1874, a judge of the Supreme Court of Louisiana could have taken such an acknowledgment as that which was taken by Judge Morphy, certified on the deed from Parmer to Barnes. The conclusion follows without argument that the last quoted statute cured the defect, if any existed, in the acknowledgment of the deed above named, that the record of that deed was validated by the statute of 1874 and the copy was admissible the same as if it had,

been regularly acknowledged according to law in existence at the time it was taken. The Act of 1874 affected alone rules of evidence and gave no greater effect to the deed than it had under the law in existence at the time of its execution, simply making it admissible in evidence when it might not have been. It affected no right of the defendants, acquired prior to the passage of the Act. The assignment is overruled.

We have carefully examined the many assignments of error and have discussed the material questions presented. The assignments not mentioned are overruled. We find no error in the proceedings of the courts, therefore, the judgments of the Court of Civil Appeals and District Court are affirmed.

### ON MOTION FOR REHEARING.

#### Decided January 19, 1910.

In the opinion in this case we said: "Besides, we are of opinion that the evidence as to the reputation of Parmer would have been inadmissible if the witness had been present at the trial." It was not necessary to the decision of the point then being discussed to decide upon the admissibility of the proposed evidence of Parmer's general reputation as a forger of land titles. That sentence will be erased, leaving the question unaffected by this opinion.

The motion is overruled.

*Affirmed.*