WESTERN UNION TELEGRAPH CO. v. CAMPBELL.    (No. 9004.)*

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 15, 1919. On Motion for Rehearing, March 29, 1919.)

1. TELEGRAPHS AND TELEPHONES ⬅➡66(4)— AUTHORITY TO RECEIVE MESSAGE — SUFFICIENCY OF EVIDENCE.

In an action against a telegraph company for delay in transmission of a death message, evidence *held* to support conclusion that for the purpose of receiving telegrams during night hours the telegraph operator of a railway company in a yard office was an authorized agent of the telegraph company, for whose negligence it was responsible.

2. TELEGRAPHS AND TELEPHONES ⬅➡66(4)— IDENTITY OF PERSON TAKING MESSAGE FOR COMPANY—SUFFICIENCY OF EVIDENCE.

In an action against a telegraph company for delay in transmission of a death message, evidence *held* sufficient to sustain finding that the person who received the ,telegram by telephone from the person sending it to plaintiff was one for whose negligence the telegraph company was liable.

3. TELEGRAPHS AND TELEPHONES ⬅➡66(1) — RECEPTION OF MESSAGE ·BY AUTHORIZED· PERSON—PRESUMPTION.

A telegram received by a telegraph company over its telephone line, maintained for business purposes, was presumably received by an authorized person; a presumption becoming conclusive in the absence of contrary proof.

4. EVIDENCE ⬅➡5(2) — MATTER OF COMMON. KNOWLEDGE—USE OF TELEPHONE.

It is a matter of common knowledge that the telephone is a means of communication of almost universal use.

5. TELEGRAPHS AND TELEPHONES ⬅➡66(1)— LACK OF AUTHORITY TO RECEIVE MESSAGE— BURDEN OF PROOF.

In action for delay in transmitting death· message, the burden of proof is on the telegraph company, receiving messages by phone for transmission, to show that the person·who answered the telephone and actually received the particular message was some person wholly unauthorized so to act.

6. EVIDENCE ⬅➡148—TESTIMONY OF STATEMENTS BY TELEPHONE.

In an action against a telegraph company for delay in delivering a death message, testimony of plaintiff's son, who sent the message, detailing ·the statements of the party at the other end of the wire when he phoned the-

message to an agent of the telegraph company for transmission, *held* not inadmissible as hearsay, irrelevant, immaterial, and prejudicial.

## On Motion for Rehearing.

7. APPEAL AND ERROR &#x21DD;719(9)—QUESTIONS REVIEWABLE—EXCESSIVE VERDICT AS FUNDAMENTAL ERROR.

In an action for delay in transmitting to plaintiff a message announcing the death of his brother, error in that the verdict for $1,120 was excessive *held* not fundamental so as to be reviewable by the Court of Civil Appeals under rule 29 (142 S. W. xiii), without an assignment of error.

Appeal from District Court, Cooke County; C. F. Spencer, Judge.

Suit by J. W. Campbell against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Hamp T. Abney, of Sherman, for appellant.
Garnett & Garnett, of Gainesville, for appellee.

CONNER, C. J. J. W. Campbell instituted this suit in the district court of Cooke county against the Western Union Telegraph Company for damages on account of mental pain suffered by reason of a failure on appellant's part to promptly transmit and deliver to him a telegram at Pampa, Gray county, Tex., announcing the death of appellee's brother at Gainesville, Tex. It was alleged in appellee's petition that by reason of such failure on the part of appellant he was unable to attend the funeral of his brother, and thereby suffered mental anguish for which the recovery was sought.

The case was tried by a jury and submitted on special issues. The verdict was favorable to appellee's contentions and judgment was given in his favor for the sum of $1,-120.

The question most urgently presented by the assignments is whether the telegram was, in fact, delivered to and received by an authorized agent of the telegraph company. The jury found that it was.

The evidence, we think, supports the conclusion that the appellant company maintained its general office for the reception of telegrams in the city of Gainesville proper, the office hours at this place being from 8 a. m. to 10 p. m. During other hours the yard office of the Gulf, Colorado & Santa Fé Railway Company in Gainesville was authorized to, and in fact did, receive telegrams for transmission over appellant's lines.

E. H. Campbell died at his home in Gainesville about 9:45 o'clock on the night of November 24, 1916. Hill Campbell, his nephew and son of appellee, about 5:45 of the next morning called up over the telephone the yard office mentioned and what occurred is thus detailed:

"I got the number of the G., C. & S. F. yard office and called that number. The telephone operator asked me what I wanted and I told the operator I wanted that number. I asked the man that answered the phone if it was the G., C. & S. F. yard office, and he replied that it was. I asked him· if he received messages for the Western Union Telegraph Company, and he said that they did. I told him that I had a death message to send, and he said to wait about 15 minutes, that they were getting a train out just then. At the end of the 15 minutes, I had been sitting by the fire, I went back. I had sat there with my watch in my hand anxious, and called again and asked if that was ·the G., C. & S. F. yard office. They said it was, and I asked if they would take a death message. He said for me to wait a minute, and then he said 'All right.' I first repeated my telephone number, and then told him it was to my father at Pampa. The message read: 'Uncle died last night 9:45, answer.' The paper handed me by Judge Garnett, attorney for plaintiff, contains the original message which I wrote down on an envelope at the time and telephoned it to the G., C. & S. F. yard office as detailed. I wrote the message down before I went and called the agent up the first time. The message read: 'J. W. Campbell, Pampa, Texas. Uncle died last night 9:45, answer. Hill.'

"When I read this message to the man at the G., C. & S. F. yard office he repeated back to me the words I delivered to him over the telephone. I asked him to repeat it, and he did so. At the time I telephoned the message in I asked if I must come to the yard office to pay for it, or could I take it to the Western Union uptown office. He said it was all right to call at the Western Union uptown office and pay it."

Hill Campbell did not recognize the voice of the party at the end of the telephone ,at the yard office, and no other direct evidence identifies him. Appellant's telegraph operator, who was on duty on the night in question, denied that he received the telephone message or telegram in question. But he testified that the office force had been authorized by one of the higher officers of the railway company to receive messages for transmission, and that when a call for a message of the kind was received over the telephone he himself either went to take it or some one of the other members of the office force would take it and give the message to him. The evidence fails to disclose what others, if any, of the office force were on duty that night, it not appearing that any person other than the telegraph operator who served in that capacity testified. The operator was employed by the railway company, and his compensation for the transmission of messages from his office was in the way of tolls

received, such commission being paid by the manager of appellant's city office.

[1, 2] We think on the whole, as already stated, that the evidence supports the conclusion that for the purpose of receiving telegrams during night hours the operator of the railway company in the yard office was an authorized agent of the appellant, for whose negligence the appellant was responsible. A more closely contested point, however, is whether the evidence sufficiently supports the conclusion that the person who received the message in question was identified as one for whose negligence appellant was responsible. It is insisted, in effect, that inasmuch as Hill Campbell was unable to identify, by voice or otherwise, the party at the other end of the telephone at the time of the conversation detailed by him, and inasmuch as the operator denied having received the message, it must be assumed that some visitor or other person wholly unconnected with the office took the message, or at least that it cannot be said that the evidence preponderates in favor of the conclusion that the jury voiced in appellee's favor on this subject. But we have concluded that we must overrule appellant's assignments relating to this point. A jury might well think it improbable that at the time of night the message was transmitted over the telephone, and in view of the character of the conversation that occurred as detailed by Hill Campbell, any unauthorized person in the yard office would have taken the message and given the replies as detailed. The jury were not bound to believe the operator. It was its province to give the operator's testimony such weight and credibility as they thought it was entitled to, and his relation to the fault, made the foundation of this suit, is such as that we cannot say that the jury wrongfully disregarded, if they did so, his denial that the telegram in question was in fact received by him. Moreover, his testimony plainly supports an inference that if he did not receive the message some other person in the office, having at least limited authority, did receive it. See Horn v. W. U. Tel. Co., 194 S. W. 387. In volume 1, § 53a, of the Blue Book of Evidence, by Mr. Jones, it is said, among other things, that:

"Those who install telephones in their places of business in connection with a telephone exchange, and use them for business purposes, impliedly invite the business world to use that means of communicating with them with respect to the business there carried on, and the presumption is that they authorize communications made over the telephone in ordinary business transactions. The decisions are not in accord, but the weight of reason and authority is in favor of the presumption. The reason is the same as that for the presumption that a business letter, properly directed and sent by mail, reaches the business office of the addressee, and is opened by him or his authorized agent. The presumption that the person who answers is authorized to speak may be very slight or strong, according to the circumstances, but the statements of such persons should be admitted in evidence as prima facie the statements of one having authority to speak."

[3-5] We feel that we must approve the rule as stated by Mr. Jones, to the effect that a message received over a telephone line maintained by a business office for business purposes was presumably received by an authorized person, and that this presumption becomes conclusive in the absence of proof to the contrary. It is a matter of common knowledge that the telephone as a means of communication is of almost universal use, and it undoubtedly but rarely happens that the sender of a message is able to identify by voice or otherwise the party at the other end of the line. We think it may be said that the burden of proof is clearly upon the person or company so doing the business of receiving messages to show that the person who answered the telephone and actually received the message was some person wholly unauthorized to so act. The jury therefore, in this case, under the circumstances detailed, were authorized, we think, to find that the message in question was, in fact, received in the yard office by some person having authority to receive it and promise its transmission.

[6] There is an objection to the testimony of Hill Campbell detailing the statements of the parties at the end of the telephone line in the yard office on the ground that this testimony was "hearsay, irrelevant, and immaterial, and highly prejudicial." We think it manifest that the objections are without force, and there being no objection to the amount of the verdict and judgment, and the testimony on other issues being sufficient to support the judgment, it is ordered that it be affirmed.

### On Motion for Rehearing.

[7] As stated in our original opinion, no attack was made by appellant upon the amount of the verdict and judgment in this case, but appellant now very earnestly insists that the verdict was excessive, and contends that the error in this respect is a fundamental one requiring determination on our part without an assignment of error.

Rule 29 (142 S. W. xiii), promulgated by the Supreme Court as our guide, confines us to a distinct specification of error and "to such fundamental errors of law as are apparent upon the record." We know of no definition of error "apparent of record" applicable to all cases. But it was said by our Supreme Court in the case of Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, that—

"This does not mean that an error which can be ascertained by looking into the record and considering the evidence may be considered

without an assignment, for that would include every error which can be considered at all. Nothing can be considered as an error which cannot be made apparent by an examination of the record. Therefore the language of the statute must be given that construction which will make it consistent with its requirements in other respects. The language 'apparent upon the face of the record' indicates that it is to be seen upon looking at the face of the record (that is, the assignment itself), the fact pointed out by it must show a good and sufficient ground for the court to interfere to prevent injustice being done to one of the parties. Perhaps the best expression is that it must be a fundamental error—such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily."

The contention that mere excessiveness in a verdict for damages, based upon negligence and mental pain, is fundamental or error apparent of the record, runs counter to our conception of the subject. Appellant cites Railway Co. v. Turner, 42 Tex. Civ. App. 532, 94 S. W. 214, in aid of its contention. But it does not affirmatively appear from the opinion in that case that there was no assignment of error pointing out the difficulty. Besides, in that case it appeared that the damages sought to be recovered were made up of separable items of elements, and the court found that there was no evidence beyond two of the items aggregating $20, and the announcement in the opinion that error in assessing damages for those items or elements to which no evidence had been adduced constituted fundamental error was probably induced by analogy from those of our cases holding that a verdict with no evidence to support it is fundamentally wrong. But in this case it cannot be so said. The damages sought was for mental pain—not made up of separable items. The relation of the plaintiff and the deceased and other circumstances are shown from which a jury could infer that pain was caused by the defaults of appellant, and the amount of compensation for mental pain resulting therefrom was in a peculiar sense for the determination of the jury. See Railway Co. v. McNamara, 59 Tex. 255, and Ward v. Cathey, 210 S. W. 289, by this court not yet officially reported.

No circumstance indicating passion or prejudice on the part of the jury has been pointed out either originally or on motion for rehearing, and the courts have more than once affirmed judgments of similar sums in like cases. See Western Union Tel. Co. v. McDavid, 121 S. W. 894; Western Union Tel. Co. v. Rabon, 60 Tex. Civ. App. 88, 127 S. W. 580; Stuart v. Western Union Tel. Co., 66 Tex. 580, 18 S. W. 351, 59 Am. St. Rep. 639.

Under such circumstances and in the absence of an assignment of error in the brief, we do not understand that our duty requires us to search the evidence and exercise the necessary discrimination and judgment in order to determine that the verdict and judgment in this case is excessive in a specified sum.

On other questions presented in the motion for rehearing we retain the views originally expressed. The motion will accordingly be overruled.