### R. L. SLAUGHTER v. J. J. TERRELL, COMMISSIONER, ET AL.

#### No. 1706.    Decided May 29, 1907.

**1.—School Land—Sale to Settler—Forfeiture for Nonresidence.**

The rights of one purchasing school land as an actual settler, who fails to comply with the conditions of his purchase, may be declared forfeited, in the same manner as in case of one making default in payment, by the action of the Commissioner of the General Land Office in indorsing on his obligation the words "Land forfeited." Where the facts did not authorize such forfeiture the purchaser has his remedy by action; but not by original suit in the Supreme Court for mandamus to compel the Commissioner to reinstate the purchase, since the proceeding involves determination of a question of fact. (Pp. 603, 604.)

**2.—Same—Limitation.**

The limitation of one year upon the action to be brought, by one desiring to purchase school land previously sold to another, to determine and declare the invalidity of the first sale, applies to cases where such sale continues to be recognized by the State, and not to the act of the Land Commissioner in declaring the first sale forfeited and reselling. (Pp. 604, 605.)

Original proceeding by Slaughter, in the Supreme Court, for mandamus against Terrell, Commissioner of the General Land Office, to compel the reinstatement of relator as a purchaser of school land after declaration of forfeiture. C. J. Adair, an adverse claimant, was made corespondent.

*Douthit & Littler* and *J. M. Caldwell,* for relator.—The act of the Commissioner of the General Land Office in attempting to cancel the sale to relator was without authority of law and void, the law giving to said officer no authority to institute ex parte investigations and to cancel sales for nonoccupancy. Acts of 1901, p. 294, sec. 3; Harper v. Terrell, 73 S. W. Rep., 949; Smithers v. Lowrance, 93 S. W. Rep., 1064; Island City Savings Bank v. Dowlearn, 94 Texas, 389; Ketner v, Rogan, 68 S. W. Rep., 774; Walker v. Rogan, 93 Texas, 253; Bates v. Bratton, 72 S. W. Rep., 157; O'Keefe v. McPherson, 61 S. W. Rep., 534.

The act of the Commissioner of the General Land Office being without authority of law is void and relator's title stands the same as if such act had never been taken. Same authorities.

The action of the Land Commissioner of the State of Texas in cancelling relator's title was not authorized by Acts of the Twenty-ninth Legislature, page 35, prescribing a period of limitation in which suits could be brought on school lands. The terms "action or proceeding" as used in said Act did not authorize the ex parte proceeding of the Commissioner of the General Land Office in this cause. Black's Law Dictionary defining the word "action" and defining the word "proceeding."

The State having brought no "action" or "proceeding" to cancel relators's title, corespondent Adair is in the position of one claiming the right to purchase school land sold to another, and not having filed his suit therefor within the time contemplated by the Act of 1905, page 35, is now precluded from asserting any claim.

*R. V. Davidson,* Attorney-General and *Wm. E. Hawkins,* Assistant, for respondent Terrell.

*E. M. Whitaker* and *Morrison & Morrison,* for respondent Adair.— The act of the Commissioner of the General Land Office in making said cancellation and endorsing on relator's obligation "forfeited for failure to reside upon and improve the land as required by law," and signed and dated as follows: "John J. Terrell, Land Commissioner, 11-17, 1905," was not without authority of law and void, but was an act authorized by law and it was the duty of the Commissioner to enter such forfeiture, presuming the facts stated in the forfeiture were true. Act of the Legislature, 1895, sec. 11, p. 67, Laws of Texas, vol. 10, p. 797; Acts of the Legislature, 1901, sec. 3, p. 294; Brightman v. Comanche County, 94 Texas, 604; Bates v. Bratton, 72 S. W. Rep., 157; Standifer v. Wilson, 93 Texas, 238; Island City Savings Bank v. Dowlearn, 94 Texas, 389; Fristoe v. Blum, 92 Texas, 85.

This respondent having purchased said land regularly after relator's sale had been cancelled and before relator had procured same to be reinstated, and sale to respondent having remained in good standing for more than one year before any action brought by relator to contest the validity thereof, relator is now barred by the statute of limitation of one year under the provision of the Act of the Legislature of 1905, page 35, chapter 29. Same authorities, and also Act of 29th Leg., p. 35, chap. 29; Murphy v. Terrell, 100 S. W. Rep., 130; Weyert v. Terrell, 100 S. W. Rep., 133.

Limitation fixed in chapter 29, page 35, Acts of the Legislature, 1905, is for persons claiming the right to purchase or lease school lands which have been heretofore or which may be hereafter sold or leased to any other person, and not against the Land Commissioner in matter of cancelling or noting cancellation of sales for failure to reside upon and improve the land according to law. Same authorities, and particularly the said Act of 1905, chap. 29, p. 35, and the cases of Murphy v. Terrell and Weyert v. Terrell.

The action of the Land Commissioner in forfeiting or entering forfeiture of relator's sale for failure by relator to reside upon and improve the land as required by law was an act authorized by law, and, therefore, the act of the State, so long as the State acquiesces therein or until relator shall through some proceeding before a court of competent jurisdiction cause same to be set aside. Authorities before cited and see also Ketner v. Rogan, 68 S. W. Rep., 774; Walker v. Rogan, 93 Texas, 253; O'Keefe v. McPherson, 65 S. W. Rep., 534; Smithers v. Lowrance, 93 S. W. Rep., 1064; Logan v. Curry, 69 S. W. Rep., 129; Hazelwood v. Rogan, 95 Texas, 295.

BROWN, Associate Justice.—Slaughter filed his petition in this

court against J. J. Terrell as Commissioner of the General Land Office and C. J. Adair, praying for a writ of mandamus directed to the said Terrell commanded him to reinstate upon the records of his office the sale heretofore made to relator of section number 6, block 36, township 1 south, certificate number 2712, Texas & Pacific Railway Company surveys in Martin County, Texas. There is no question as to the regularity of the several sales of this section of land, nor of section number 2, which is connected with it in this proceeding, therefore we will not go into the details of the petition which sets up purchases made by different persons who had owned each section and the procedure by which their rights were acquired. For the purposes of this case the following statement will present the material facts alleged in the petition and the answer:

Section number 6, before described, and section number 2, block number 37, township 1 south, certificate number 2874, Texas & Pacific Railway Company surveys in Martin County, were a part of the public free school lands of this State; each had been regularly classified and appraised and placed on the market for sale. Each section had been sold as hereafter stated by regular procedure under the law and in each subsequent sale the purchaser was regularly substituted for the original purchaser in accordance with the statute. J. P. Waggoner became the purchaser of section number 2 as an actual settler and resided upon it and afterwards sold and transferred his purchase of the said section to W. P. Young, who thereafter lived upon it as his home. Section number 6 was within a radius of five miles of section number 2, and W. P. Young purchased section number 6 as additional lands to his home tract. On the 3d day of December, 1904, W. P. Young, by writing according to law, transferred sections numbers 2 and 6 to R. L. Slaughter, and the deed was recorded as required by law and deposited in the General Land Office with his substitute obligation. The validity of this transfer is not in issue. It is alleged in the petition that Slaughter moved upon section number 2 as his home section and that he continued to reside upon that section until the three years' occupancy had been completed, counting from the time of the original settlement thereon and that he had complied in every respect with the law relating to such purchase. He alleges in his petition that he had resided upon the said land continuously for more than one year before the institution of this proceeding and that no suit had been brought by anyone against him to recover the said section number 6, wherefore he says that the defense of nonoccupancy is barred by the statute of limitation of one year under the Act of the Twenty-ninth Legislature.

On the 17th day of November, 1905, J. J. Terrell, Commissioner of the General Land Office, endorsed on the wrapper, enclosing the papers in his office with reference to section number 6, the following: "Forfeited for failure to reside upon and improve the land as required by law." The relator was not given a hearing upon the question of his occupancy and improvement of the land. The Commissioner of the General Land Office refused to recognize the right of relator to the said section number 6, but on the contrary, placed the same upon the market for sale, and, upon the application of C. J. Adair, the corespondent herein, the land was awarded to him on the 20th day of November,

1905. Adair's application was in regular form and he has complied with the law in all respects with regard to the purchase of same.

Relator claims that the Commissioner of the General Land Office had no authority to cancel the sale which had been made of the said section number 6 to him and that Adair acquired no right to said section of land. It is also claimed that the right to question the validity of the purchase made by the relator of section number 6 is barred by the statute of limitation of one year which is prescribed as the period in which such suits must be brought.

Respondent Terrell filed an answer in which he denies that Young, or relator, Slaughter, were ever settlers on the land in good faith, and alleges that the occupancy of Waggoner, Young and Slaughter did not amount to as much as three years' continuous actual possession of the land and that the improvements, which the law required to be made upon the land, were not of the value as required, viz: $300. He also charges that neither Slaughter nor Young were ever in the actual bona fide possession of the land with the intention of making it a home, but that Slaughter, Waggoner and Young, with others, entered into a conspiracy by which they sought unlawfully to acquire twelve sections of the school land of the State for the benefit of Slaughter, and that sections numbers 2 and 6 were embraced in the number thus to be acquired. It is alleged that Waggoner purchased in pursuance of this conspiracy and that the acts of all the parties done subsequently thereto were with a view to carrying it out by perfecting the unlawful purchase.

Adair also filed an answer in which he adopts the answer of the Land Commissioner upon these issues and sets up other facts which are not necessary for us to state here. These allegations present issues of fact which this court can not try, but the relator insists that the issues do not properly arise in the case for the reason that he seeks only to have his purchase restored to the records of the Land Office because the Commissioner had no authority to declare a forfeiture of the purchase for a failure to occupy the land and to make improvements thereon. Relator also claims that because his purchase and occupancy had commenced more than one year prior to the time of filing his petition, the respondents are barred by the statute of limitation of one year from setting up his failure to perform the conditions of his purchase.

The eleventh section of an Act of the Twenty-fourth Legislature, "for the sale and lease of public free school, asylum and public lands," contains the following provision: "If upon the first day of November of any year the interest due on any obligation remains unpaid, the Commissioner of the General Land Office shall endorse on such obligation 'Land Forfeited' and shall cause an entry to that effect on the account kept with the purchaser, and thereupon said land shall thereby be forfeited to the State without the necessity of reentry or judicial ascertainment, and shall revert to the particular fund to which it originally belonged, and be resold under the provisions of this Act or any future law. . . . And if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, he shall forfeit said land and all payments made thereon to the State, in the same manner as for nonpayment of interest, and such land shall be again for sale as if no such sale and forfeiture had occurred." There can be no difficulty

in the application of this statute to the facts of the case before us. The law clearly authorizes the Land Commissioner, in case of failure of the purchaser to pay the interest on any obligation for land, to mark on the obligation, "Land Forfeited," and the purchase is thereby forfeited. In the same section of the statute, in case of failure of the purchaser to comply with the requirements of the law as to residence upon the land and improvements thereon, it is said that the land shall be forfeited in the "same manner" as if it were a case of failure to pay the interest upon the obligation. The manner of forfeiting the land for failure to pay the interest is to endorse on the obligation, "Land Forfeited," hence the manner in which the forfeiture for nonresidence or failure to improve is the "same manner;" that is, by endorsing the words "Land Forfeited" upon the obligation.

The third section of an Act of the Twenty-seventh Legislature, "for the sale and lease of public free school and asylum lands," embraces the following provision: "Every purchaser shall be required within three years after his purchase to erect permanent and valuable improvements on the land purchased by him which improvements shall be of the reasonable market value of three hundred dollars. If any purchaser shall fail to reside upon and improve in good faith the land purchased by him as required by law, he shall forfeit the said land and all payments made thereon to the State, to the same extent as for the nonpayment of interest, and such land shall be again upon the market as if no such sale and forfeiture had occurred, and all forfeitures for nonoccupancy shall have the effect of placing the land upon the market without any action whatever on the part of the Commissioner of the General Land Office." The two statutes cover the same subject matter and embrace practically the same provisions. There is no conflict between the two, hence both remain in force and, taken together, confer full authority upon the Commissioner of the General Land Office under a state of case like this to enter a forfeiture upon the obligation of the purchaser for failure to occupy and improve the land as required by law. The endorsement "Land Forfeited" on relator's obligation being authorized, his relation of purchaser from the State was terminated; if wrongfully done, he might have his redress in a proceeding in court.

Relator invokes protection under section 1 of an Act of the Twenty-ninth Legislature, "limiting time to bring suits for school, university or asylum lands," which reads as follows: "That hereafter all persons claiming the right to purchase or lease any public free school lands, or any lands belonging to the State University, or either of the State Asylums which have been heretofore or which may be hereafter sold or leased to any person under any provision of the law authorizing the sale or lease of any of said lands, shall bring his suit therefor within one year after this Act goes into effect, or after the date of the award of such sale or lease, if such award is made after the taking effect of this Act, and not thereafter." The second section of the Act contains this proviso: "Provided that nothing in this Act shall be construed to affect the State of Texas in any proceeding that may be brought by it in respect to any of the said lands." The provisions of this Act are not applicable to the facts of the present case. In order to ascertain what

the Legislature intended by the enactment of this law we must consider the evil that existed and determine what the remedy was to be. Under the law as it previously existed, purchasers of school lands were liable to have their titles attacked by third persons who desired to purchase the land, and such persons might call in question the qualification of the purchaser as well as the performance of conditions prescribed by law, for example, that when the purchase was made the purchaser did not actually reside upon the land, or that he did not intend to make it his home, and thus, although the State recognized his right, the purchaser was constantly exposed to such attacks. This rendered such titles uncertain and to remedy that evil the Legislature enacted the law now under consideration, which requires that any person who desires to purchase land theretofore purchased by another shall bring his suit to set aside the former purchase within twelve months of the award of it or he will be barred. Clearly this applies only to cases where the State recognizes the validity of the purchase being attacked and does not apply to a case like the present, where there has been a forfeiture of the former purchase by the Land Commissioner and the land again put upon the market. There is no necessity for a suit by a purchaser of forfeited land; indeed, to so hold would be to say that the Commissioner had the power to declare the forfeiture, although the award may have been made many years before that time, and the power to sell the land, but that the purchaser at the second sale could not get possession of the land because his suit could not be brought within a year from the award to the first purchaser which had been forfeited. Such an absurd result is a sufficient answer to the contention for that construction.

The pleadings of the respondents raise an issue of fact which this court can not determine and the petition for mandamus must therefore be dismissed.

*Dismissed.*