NATIONS et al. v. MILLER. (No. 906.)

(Court of Civil Appeals of Texas. El Paso. April 3, 1919. On Rehearing, May 9, 1919. Second Motion for Rehearing Denied May 29, 1919.)

1. APPEAL AND ERROR &#9094;1003—NEW TRIAL &#9094;72—REVIEW—SETTING ASIDE VERDICT.

Verdict, to authorize trial or appellate court to set it aside, must be against the preponderance of the evidence to a degree showing that manifest injustice has been done, at least it must be affirmatively wrong.

2. PUBLIC LANDS &#9094;173(18)—TITLE AS PURCHASER OF SCHOOL LANDS—SUFFICIENCY OF EVIDENCE.

Evidence in trespass to try title held sufficient to sustain findings that defendant purchaser did not actually settle free school land within 90 days after its award to him, as required, and did not reside thereon continuously for three years after actual settlement.

3. NEW TRIAL &#9094;105—NEWLY DISCOVERED IMPEACHING EVIDENCE.

Newly discovered evidence, when its object is to impeach the credit of the witness, is not a ground for grant of new trial.

4. NEW TRIAL &#9094;99 — NEWLY DISCOVERED EVIDENCE—DISCRETION OF COURT.

The grant or refusal of new trial on the ground of newly discovered evidence is largely in the discretion of the trial judge.

5. PUBLIC LANDS &#9094;173(19) — ACTION TO RECOVER FORMER SCHOOL LANDS—REMARKS IN OVERRULING MOTION FOR NEW TRIAL—GROUND OF RULING.

In trespass to try title to recover land, originally public free school lands, from the purchaser thereof and his lessee, remarks of the trial court in overruling motion for new trial, and the ground on which he based his ruling, the ground being that the purchaser did not settle on the land for a home, but settled on it as employé of his subsequent lessee, held not reversible error.

6. APPEAL AND ERROR &#9094;719(1)—REVIEW—ERROR UNASSIGNED.

The Court of Civil Appeals cannot take cognizance of an error not properly assigned, unless it be an error of law apparent on the face of the record, or a fundamental error.

On Rehearing.

7. APPEAL AND ERROR &#9094;173(2)—ISSUES IN LOWER COURT—FREE SCHOOL LANDS—FORFEITURE.

In trespass to try title to public free school lands by the purchaser on forfeiture thereof against the original applicant to purchase and his lessee, defendant appellants held unable, for the first time in the Court of Civil Appeals, to question the sufficiency of the procedure of the land commissioner in making forfeiture.

8. PUBLIC LANDS &#9094;173(21)—FREE SCHOOL LANDS — SUCCESSIVE PURCHASERS — FORFEITURE—LIMITATION STATUTE.

The fact of forfeiture of public free school lands by an applicant to purchase is material to the right of the purchaser on forfeiture to prosecute trespass to try title to recover the lands from the original purchaser and his lessee only as relieving him from being barred within a year by Rev. St. 1911, arts. 5458, 5459.

9. APPEAL AND ERROR &#9094;230—ERROR IN INSTRUCTIONS—WAIVER BY FAILURE TO OBJECT.

Under Acts 33d Leg. c. 59, in trespass to try title to recover former free school lands from the original purchaser and his lessee, if definitions in the charge of "actual settler" and "continuous residence" were erroneous, the error was waived by defendants' failure to object at proper time.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by F. P. Miller, Administrator, etc., against J. H. Nations and others. From

NATIONS v. MILLER **743**
(212 S.W.)

judgment for plaintiff, defendants appeal. Affirmed.

See, also, 146 S. W. 261.

Turney, Burges, Culwell, Holliday & Pollard, T. A. Falvey, and C. L. Galloway, all of El Paso, for appellants.

Edwards & Edwards and Jno. L. Dyer, all of El Paso, for appellee.

WALTHALL, J. This suit was originally filed by appellee, F. P. Miller, and his wife, I. D. Miller, on the 7th day of July, 1910. On January 24, 1918, appellee, Miller, filed his first amended original petition, individually and as community survivor and as community administrator of the estate of himself and his deceased wife, upon which amended petition this case was tried. The action is one in trespass to try title brought by Miller to recover six sections of land, originally public free school lands, from W. P. Paschal and J. H. Nations, a lessee of Paschal. On May 18, 1906, Paschal applied to purchase said lands, and made the formal affidavit that he would settle thereon within 90 days. On June 26, 1906, all of said lands were duly awarded to Paschal by the land commissioner. On May 24, 1909, the commissioner on each of Paschal's applications entered, "Land forfeited for failure to reside thereon as required by law." On May 26, 1909, Mrs. I. D. Miller applied to purchase said land, and on June 10, 1909, same was awarded to her.

Paschal's purchase of the land, barring the issues of fact submitted to the jury as to settlement and residence thereon, ⁂ was agreed was in formal compliance with the law, the required payments on his obligation were duly made up to the time of the commissioner's forfeiture of his purchase, and have since been duly tendered. He was in possession of the lands at the time of the forfeiture. Mrs. Miller also, after the lands were awarded to her, fully complied with the law in the purchase of the lands, the settlements thereon, and in making the payments thereon up to the time of her death, and that F. P. Miller since her death has complied with the law in every particular. By an agreement in writing between the parties hereto, and introduced in evidence, every fact, apparently, affecting the title of either Paschal or Miller, was agreed to, to obviate the necessity of making proof thereof.

The case was tried with the aid of a jury, and on the jury's findings on special issues presented judgment was rendered for appellee, Miller, for the lands in controversy, and for the sum of $144.87 as rents, with interest.

In answer to the two special issues of fact submitted to the jury, and the only two on which a controversy is presented here, without quoting the verbiage of the charge and findings, the jury found: First, that Paschal failed to become an actual settler on section 28 (one of the sections in controversy and the one claimed as the home section) within 90 days after the 16th day of June, 1906, the date of the award of the lands to him; second, that Paschal failed to reside continuously upon said section 28 as his home during the period elapsing between the date of his settlement on said section (28), if he did settle thereon, and the 24th day of May, 1909, the date of the forfeiture of the land to him by the land commissioner.

As explanatory of expressions used in the issues submitted, the court in the charge defined "an actual settler" to be one who actually occupies and settles upon land intending to make it his home, and that by "residing continuously" is meant a substantial, unbroken residence upon the land as a home; but the continuity of one's residence is not broken by mere temporary absence from the land for short periods of time for the purpose of business or pleasure, providing that while absent the intention is maintained to return to the land as a home.

Appellants in the first five assignments of error insist that the verdict of the jury in the two findings of fact is clearly and palpably against the evidence, and that when such is the case, on special issues presented, it is reversible error for the trial court to overrule and refuse to grant a new trial based on that ground. The first three assignments have reference to the jury's findings on the first issue (settlement within the 90 days), and the fourth and fifth have reference to the jury's finding on the second issue (the three-years residence). The several assignments are each followed by propositions each using different forms of expression; but, as we view them, they all accentuate the one contention made under said assignments, that the evidence so clearly and unmistakably preponderates in favor of appellants on the issues tendered by the court as to show manifest injustice to appellants, and that it is error to refuse to grant a motion for a new trial based on such grounds. We will consider them together.

[1] We are referred by appellants and by appellee to a large number of cases relating to and stating the rule controlling trial and appellate courts in passing upon the question of the sufficiency of the evidence to sustain the verdict, or the finding of a jury on special issues, as presented in the assignments. Of the number of cases reviewed we have concluded that the Supreme Court in Choate v. San Antonio & A. P. Ry. Co., 90 Tex. 88, 37 S. W. 319, clearly and succinctly states the governing rule applicable to the contention made here that we need refer to that one case only. In that case Judge Brown said a trial court is not justified in taking from the jury a question of fact ex-

cept in case the evidence is such that there is no issue made for the jury to determine. It is there held that a different rule applies to the granting of new trials by trial courts and Courts of Civil Appeals. The rule, then, is stated to be that, "although there may be sufficient evidence in a case * * * to submit it to the jury, yet, if the verdict rendered thereon is against the preponderance of the evidence to that degree which shows that manifest injustice has been done, the trial court may and should grant a new trial. The judge should not invade the province of the jury, and take from it the decision of the question which properly belongs to it; neither should he abdicate the functions of his office, and permit the prerogative of the jury to be perverted to the accomplishment of wrong." The rule, as we understand it, does not authorize trial nor appellate courts to set aside verdicts of juries, merely because the evidence is conflicting, nor where the verdict seems to us to be against the great preponderance of the evidence, nor when the verdict does not appear to be right; but, as said by the Supreme Court in the case from which we have quoted to justify the setting aside a verdict it must be against the preponderance of the evidence to the decree which shows that manifest injustice has been done; that is, it must be affirmatively wrong.

In Stroud v. Springfield, 28 Tex. 650, after commenting on the evidence, and after stating there was great conflict in the evidence, and that the court was of the opinion that the jury found against the weight of the evidence, the Supreme Court said:

"From having seen the witnesses, and heard their testimony, and observed their manner of testifying, they were in a much better position to judge of the weight and degree of credit to be attached to their statements than we could possibly be by an inspection of the record. * * * It is well settled in the adjudications of this court that a verdict will not be disturbed because a jury may have erred. In order to justify this court in setting aside such a verdict, it is not sufficient that it does not appear clearly to be right; it must appear to be clearly wrong."

The evidence covers about 75 pages of the record, entirely too lengthy to be repeated here. Now, what facts were submitted to the jury for them to determine from the evidence, briefly, in the first issue, (a) actual settlement within 90 days after June 16, 1906; (b) purpose of settlement to make it his home; second issue, (a) continuous residence for three consecutive years after actual settlement; (b) residence as his home. The actual settlement must necessarily have been made on section 28, and the continuous residence thereon commenced on or about the 15th day of September, 1906.

[2] We will briefly state a few features of the evidence: Paschal testified, and his affida-vit of settlement states, that he made his actual settlement on the land (section 28, home section) on the 3d day of September, 1906, and we will consider his residence as beginning at that time. At that time, and for some time previous, and during the years following, he was employed by appellant Nations as ranch foreman, and receiving $40 per month. He testified:

"Mr. Patterson made out my application for the purchase of the land. He is Mr. Nations' manager. When I took that land up, I leased it to Mr. Nations for fifteen years."

The lease contract is not found in the record, and the evidence does not show the purpose of the lease, its character, conditions, qualifications, or reservations of rights of use for residence to Paschal, if any there were. Much evidence was offered to show the times when and the values of certain improvements, such as a house, tank, and windmills, were put on the property; but, no evidence having been offered to show the terms of the lease contract, we do not know upon whom, under the lease, devolved the duty to make such improvements. Further, without quoting the evidence at this time, we think it clearly appears therefrom that about all of the improvements, such as the house, tank, windmill, etc., put upon the land, were either furnished or directly paid for by Mr. Nations; and, while Paschal said the things were charged up to him by Nations, the question of his indebtedness to Nations for them, and whether Paschal put the improvements on the land, or whether Nations did so for his employés to live in, as testified to by Quinn, and hereafter stated, would be for the jury to determine. It seems to us that the lease of the lands to Nations, taken in connection with the other evidence, tends to support the finding of the jury that Paschal, if he was on the land as claimed by him, was not there for himself, but rather that he was on the land for his employer, in the discharge of his duties to his employer. If he was on the land for another and not residing on the land as his home, the finding of the jury on the issue should be sustained. Numerically more witnesses testified in favor of appellants than appellee, but, when analyzed, their evidence shows interest, relationship, bias, and much inconsistency in the facts detailed, all of which were within the observation of the jury and the trial judge. Appellants do not point out, by brief or oral argument, any fact essential to appellee's cause of action upon which evidence was not offered; but the contention is made that the evidence so greatly preponderates in appellant's favor that manifest injustice is shown in overruling the motion for new trial. It is undisputed that Pat Quinn, appellee's principal witness, was working for Mr. Nations in September, 1906, and months previous

thereto, and that he was present and one of the parties who built the tie shack on section 28, the home section claimed by Paschal, and, at least, had an opportunity to know the facts to which he testified. He testified to having hauled the material to build the house, referred to as the tie shack, put upon section 28; assisted in the work then being done on that section; that he stayed on section 28 until the 28th of September, 1906; that during July, August, and September of 1906 he, with others, hauled a derrick up there, a windmill, and started a well; that Paschal did not give instructions as to where the derrick should be placed or the well sunk; that Nations, Patterson (Nations' manager), Paschal, and Shanks and himself were present and that Nations gave the instructions as to where to put the well, and, returning later, instructed that the well rig be moved 20 or 25 feet, saying, "Boys, it ain't on my land," and that the well was moved as he instructed. Quinn testified:

"From the time I went there until I left there on September 28th, in absolutely no respect did Pink Paschal (W. P. Paschal) live upon, occupy, or reside there; he lived at Helm No. 1, and had his family there. * * * I left No. 28, on September 28th, and went down to block No. 80, about three miles south of there, and stayed there about four years. During that time I had occasion to go back on section 28 regularly. I ride that country all the time. In the fall of 1906 no one was living at the tie shack on section 28; it was vacant. During the year 1907 a party named Seegring was living there. During the year 1908 I didn't see anybody there. I don't know that Paschal ever went there to live in that tie shack; I never saw him there. He took his meals at Helm No. 1, and in El Paso. * * * During 1906 and 1907 I had occasion to go to that tie shack. The door was always open; it looked like the cattle had stood round in there; I went inside. I was riding that country pretty near every day. During that time I would always see Pink Paschal either on the road or at Helm No. 1. * * * After I left the place, on September 28, 1906, I am able to swear that Paschal did not live there. He never made his home there. He never had his family there. * * * I built the house. It was a habitable house. It was such a house as a man could make a home in. * * * The tie house was built for a home for the employés of Nations. Paschal was employed by Nations at Helm No. 1, as a foreman. His business was around the pasture, and No. 2 (the tie shack) was in the pasture."

We have stated only a brief portion of Quinn's evidence, as it is principally upon his evidence appellee relies to sustain the verdict of the jury. Much of what he said, especially as to Paschal's not being on the land, is contradicted by Paschal and other witnesses. To us it is evident that, if what Quinn said was true, Paschal did not settle upon the land as required by law, nor did he reside upon the land as required by law. Nations did not testify.

[3, 4] Much of appellant's evidence, especially on matters of dates, and Paschal's residence on the land, is conflicting, uncertain, and cannot be harmonized. We need not quote the evidences to show its inconsistencies. Appellant's sixth assignment is as follows:

"As evidence of the prejudice of Pat J. Quinn, the only witness introduced by plaintiff, which prejudice was not known to said defendant, W. P. Paschal, at the time of the trial of said cause, and was only learned by and through a letter (as appears through the affidavit of J. H. Nations filed in this cause on his motion for a new trial) delivered to defendant, J. H. Nations, on the ——— day of February, 1918, by said Pat J. Quinn, a true and correct copy of the original is hereto attached, marked 'Exhibit A,' and prayed to be taken and considered as a part of this motion. The original letter is in the hands of the attorneys for the defendants, and can be exhibited to the court or attorneys for plaintiff on request."

This ground of the motion is sworn to by Paschal. We have not found in the record the affidavit of Mr. Nations, referred to in the assignment. We do find a long, rambling, and almost unintelligible letter, dated February 1, 1918, addressed to Mr. J. H. Nations, and signed Pat J. Quinn. The ground of this assignment is prejudice of the witness, and the evidence desired goes to his credibility. It seems to be firmly settled as the rule in this state that newly discovered evidence (if the evidence here is newly discovered), when its object is to impeach the credit of the witness, a new trial will not be granted on that ground. The granting or refusal of a new trial on such ground also is largely in the discretion of the trial judge. The cases to which we are referred by appellee sustain this view. Jones Estate v. Neal, 44 Tex. Civ. App. 412, 98 S. W. 420; Houston City Street Ry. Co., v. Sciacca, 80 Tex. 356, 16 S. W. 31; Scranton v. Tilley, 16 Tex. 193; H. & T. C. Ry. Co., v. Forsyth, 49 Tex. 171; Moore v. Temple Grocer Co., 43 S. W. 845.

[5] By the seventh assignment complaint is made because the trial judge, Hon. P. R. Price, in overruling the motion for new trial, made the following statement:

"That J. H. Nations had put the windmill on there; he had put the tank on there; and he had put the house on there; that Paschal was the man that received $40 a month; that he had leased for the space of fifteen years; he had testified that for these improvements he owed Nations two thousand dollars; that from these facts the jury might have inferred that he did not settle on it for a home, but settled on it as an employé of J. H. Nations; that the story was so unusual as might warrant them in disbelieving his entire testimony."

It is claimed that the court's ruling on the motion was error because predicated on the question of intention and good faith, and not on the preponderance of the evidence as to settlement or residence on the land. It is asserted that intention and good faith on the part of Paschal in the settlement and residence on the land was not a material issue in the case.

Paschal's evidence discloses his claim of settlement and residence on the land was in compliance with the law governing sales of public school lands. His evidence, introduced by appellants, reads in part:

"I reside out here on what is called No. 2, along about Tobin. I resided out there in 1906. The ranch of mine is known as Ranch No. 2. That ranch is my home. It was my home in 1906. * * * I made improvements on that section which I claimed as my home prior to the fall of 1906."

After a lengthy and detailed statement as to the putting in a well, windmill, the tie house, corrals, at the cost of about $600, he said:

"In September, 1906, I lived on this place of mine called No. 2. I did not own any other home. I claimed this as my home. I lived there in 1907. I never did leave that place with a view of not returning. * * * I was working for wages then. * * * I leased all this property to Mr. Nations. He was paying me for all the property. * * * I stated that Mr. Nations paid the wages of these men that did the building, and he bought the windmill for me and all these improvements; he charged that up to me * * * I have an idea about what I owe him. I cannot tell you exactly; the whole thing comes to a little over two thousand dollars—mighty near."

The above is but a small portion of the evidence introduced by appellants as showing that Paschal had settled on the land and was residing on the land as a home. The issue as to the purpose of the settlement was clearly made, and we think properly so, and was a material issue in the case. As we construe the case of Salgado v. Baldwin, 105 Tex. 508, 152 S. W. 165, we do not think we are in conflict with it. The statement of the trial judge does not disclose that his ruling was predicated on the question of intention and good faith, as claimed in the assignment, but says:

"From these facts [stated more fully in the evidence quoted] the jury might have inferred that he did not settle on it for a home, but settled on it as employé of J. H. Nations."

The evidence clearly and unmistakably shows that the windmill and the material of the tie house were furnished by Mr. Nations, and with the tank were put on the land by Mr. Nations' employés while working for him by the month, he directing the location of the well, and that before September 3, 1906, the date Paschal claimed to settle on the land under his application to purchase, we think the remarks of the trial judge in overruling the motion, nor the ground upon which he based his ruling, are not reversible error.

Appellants' eighth assignment and its subjoined proposition read as follows:

"Because after the said land in controversy had been awarded to said defendant, W. P. Paschal, on his application to purchase the same, by the commissioners of the general land office of Texas, and after said commissioner had received and accepted and filed the affidavit of settlement made by said defendant, Paschal, and after the said commissioner had received the obligation from the said defendant to the said state for the purchase of said land, and the sum of money due the said state from said Paschal as a purchaser of said land, and the said commissioner not having canceled said purchase for a failure by the said Paschal to settle on said land within ninety days after the same had been awarded to him, and more than three years having elapsed after said settlement before this suit was filed, and more than one year having elapsed after the award to plaintiff, Miller, before he filed this suit, plaintiff is estopped from raising in this case the issue that said Paschal did not settle on said land within ninety days after the same was awarded to him as required by law, the first finding of the jury that the defendant personally did fail to settle on said land within ninety days after his said award cannot be considered as a basis for rendering judgment in this case in favor of said plaintiff and should be set aside and held for naught.

"Proposition: The issue as to the settlement on the land in controversy by W. P. Paschal, within ninety days after the same was awarded to him, can only be considered at the instance of the state and not by plaintiff. It was reversible error for the trial court to overrule and refuse to grant a motion for new trial and enter judgment on said finding of the jury when that said question was duly presented to in said motion by appellants."

To this it may be replied that the finding of the jury that Paschal did not settle upon the land within the 90 days required by law may be entirely disregarded, but it would not affect Miller's right to judgment because, in response to the second issue, the jury found that Paschal failed to reside upon the land as a home during the period elapsing between the date of settlement and May 24, 1909, when the land commissioner canceled. Upon this latter finding alone Miller was entitled to judgment.

[6] In the argument subjoined to the eighth assignment there are a number of reasons advanced as ground of reversal, the same being presented as fundamental errors. It is well settled that this court cannot take cognizance of an error not properly assigned, unless it be an error in law apparent on the face of the record, or, as it is usually termed, a fundamental error. Searcy v. Grant, 90 Tex. 97, 37 S. W. 320. Such errors have been several times defined by the Supreme Court

Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Oar v. Davis, 105 Tex. 479, 151 S. W. 794.

We do not regard the reasons advanced by appellant as presenting "fundamental error" within the meaning of that term as it is defined in the cited cases. Not being presented by proper assignments of error, they cannot be considered. Rule 23 (142 S. W. xii); Searcy v. Grant, supra; City of Beaumont v. Masterson, 142 S. W. 984.

Lest we be mistaken in our view that the errors now insisted upon are not fundamental, we have considered the same, and reached the conclusion that they present no reversible error.

Considering the record as a whole, it is apparent that no question was raised as to the manner in which the land commissioner made entry of the forfeiture of the Paschal purchase, and that it was the evident purpose of the written stipulation between the parties to eliminate all such questions, and try only the issues of fact relative to settlement and occupancy, which were regarded and treated by the parties as the controlling questions in the case.

Finding no reversible error, the case is affirmed.

## On Rehearing.

In passing upon appellants' motion for rehearing it is deemed well to completely restate the rulings upon which the various contentions are overruled and the judgment affirmed.

The special issues and court's charge in connection therewith are as follows:

"Question No. 1. Did the defendant W. P. Paschal fail to become an actual settler on section 28 within ninety days after the 16th day of June, 1906, the date of the award to him? Answer this question 'Yes' or 'No.'

"In this connection you are instructed to answer the same 'Yes' if you believe the affirmative thereof from a preponderance of the evidence; otherwise to answer same 'No.' By 'preponderance of the evidence' is meant the greater weight of credible testimony.

" 'An actual settler,' as used in the issue submitted, may be defined as one who actually occupies and settles upon land intending to make it his home.

"Question No. 2. Do you find from a preponderance of the evidence that W. P. Paschal failed to reside continuously upon section 28 as his home during the period elapsing between the date of his settlement on said section, if he did settle thereon, and the 24th day of May, 1909, the date of the forfeiture by the land commissioner? Answer this question 'Yes' or 'No.'

"In answering this question you are instructed that by 'residing continuously' is meant a substantial, unbroken, residence upon the land as a home; but the continuity of one's residence is not broken by mere temporary absence from the land for short periods of time for the purpose of business or pleasure, provided that while absent the intention is maintained to return to the land for a home.

"In connection with question No. 2, you are instructed that in determining whether W. P. Paschal did or did not continuously reside upon said section 28, that you will not consider the fact that on the 24th day of May, 1909, the commissioner of the general land office canceled the purchase of the said W. P. Paschal to the land in controversy."

Both of these questions were answered "Yes." No special charges or issues were requested by appellants, and no objections were made to the charge. A third question submitted related to rental values.

The first five assignments question the sufficiency of the evidence to support the findings of the jury upon issues 1 and 2. These are overruled for the reason that, in our opinion, the evidence is sufficient. The evidence supporting the same is set out in the original opinion.

The sixth assignment, complaining of the overruling of the motion for a new trial on account of newly discovered evidence in the form of a letter written by the witness Quinn to Nations, dated subsequent to the trial, is overruled for the reason stated in the original opinion.

The seventh assignment, which is submitted as a proposition, reads:

"Because the district judge, before whom this case was tried, to wit, P. R. Price, in overruling defendant's motion to set aside the findings of the jury in the said cause, made the following statement:

" 'That J. H. Nations had put the windmill on there; he had put the tank on there; that he had put the house on there; that Paschal was the man that received forty dollars a month; that he had leased for the space of fifteen years; he had testified that for these improvements he owed J. H. Nations two thousand dollars; that from these facts the jury might have inferred that he did not settle on it for a home, but settled on it as an employé for J. H. Nations; that the story was so unusual as might warrant them in disbelieving his entire testimony.' This was error because the court predicates his ruling on the question of intention and good faith, and not on the preponderance of the testimony as to settlement or as to occupancy, as shown by bill of exception No. 1.

"The question of intention and good faith on the part of W. P. Paschal in the settlement and occupancy of the land in controversy was not a material legal issue in the case, and it is reversible error for the trial court to overrule and refuse to grant a new trial in consideration of that issue, when duly presented by the party injured on that ground."

This is overruled for the following reasons:

First. The judgment in this case is based on the jury's findings, and not upon remarks by the court in overruling the motion for new trial. The views expressed by the court in overruling the motion could have had

no possible influence upon the verdict of the jury.

Second. So far as the bill of exceptions discloses these were isolated remarks of the court, and there is nothing to indicate that his action in overruling the motion was predicated solely upon the theory indicated in appellant's contention. The record is insufficient to advise this court of all that was in the mind of the trial court when he overruled appellant's motion, and which operated to induce such action upon his part.

The eighth assignment, and its sole supporting proposition, is as follows:

"Because after the said land in controversy had been awarded to said defendant, W. P. Paschal, on his application to purchase the same, by the commissioner of the general land office of Texas, and after said commissioner had received and accepted and filed the affidavit of settlement made by said defendant, Paschal, and after the said commissioner had received the obligation from the said defendant to the said state for the purchase of said land, and the sum of money due the said state from said Paschal, as a purchaser of said land, and the said commissioner not having canceled said purchase for a failure by the said Paschal to settle on said land within ninety days after the same had been awarded to him, and more than three years having elapsed after said settlement before this suit was filed, and more than one year having elapsed after the award to plaintiff, Miller, before he filed this suit, plaintiff is estopped from raising in this case the issue that said Paschal did not settle on said land within ninety days after the same was awarded to him as required by law, the first finding of the jury that the defendant personally did fail to settle on said land within ninety days after his said award cannot be considered as a basis for rendering judgment in this case in favor of said plaintiff, and should be in this set aside and held for naught."

First proposition under eighth assignment of error:

"The issue as to the settlement on the land in controversy by W. P. Paschal within ninety days after the same was awarded to him can only be considered at the instance of the state and not by plaintiff. It was reversible error for the trial court to overrule and refuse to grant a motion for new trial and enter judgment on said finding of the jury when that said question was duly presented to in said motion by appellants."

The finding of the jury upon the issue of settlement within 90 days may be entirely disregarded, and the judgment nevertheless must be affirmed upon the jury's second finding.

What has been said disposes of every ground of error which is properly assigned, but in a lengthy argument appended to their brief appellants present additional grounds upon which a reversal is sought; and, in order to avoid the consequence resulting from a failure to properly assign the same, they are here presented as fundamental er-

ror. Many of the propositions asserted as fundamental error are academic, and as abstract propositions of law are correct. Some of them relate to the first issue, and we will not discuss those, for, as held above, the first issue may be disregarded, and the judgment nevertheless must be upheld on the finding in response to the second question.

The substance of the first contention is that this suit cannot be maintained by Miller because the land commissioner in his forfeiture of the Paschal purchase did not comply with the law, in that the indorsement of forfeiture was made upon Paschal's application instead of his obligation. Further, it was not shown that the commissioner made, or caused to be made, an entry of the forfeiture on the account of Paschal in the land office as required by the ruling in Chambers v. Robison, 107 Tex. 315, 179 S. W. 123. Further, it was not shown that the commissioner had mailed notice of the forfeiture to the county clerk.

The statement of facts contains a written agreement signed by counsel for the respective parties, the manifest purpose of which, we think, was to admit the regularity of all documentary evidence of title of both parties, and that it was intended to thereby concede the sufficiency of all such evidence of title, and dispense with its formal proof, and eliminate all questions except the issues of fact relative to settlement and occupancy. The agreement recites that it was to obviate the necessity of making proof; that on May 26, 1909, Mrs. Miller, in legal form and as required by law, applied to purchase the land, describing same; that the land *was duly and legally awarded to her* by the commissioner on June 10, 1909; that her purchase was *upon due and legal classification, appraisement, and advertisement*; that the award to her was now in good standing in the land office and was being recognized by that office; that ever since the award to plaintiff here the plaintiff has been recognized by the commissioner of the land office as being the owner of the land in controversy, and that, since the time of the cancellation of the award to Paschal, he (Paschal) has not been recognized as the owner thereof in the land office; that on May 18, 1906, Paschal applied to purchase the land, describing same:

"Said applications being all in due and legal form and duly executed, except that the application to purchase said section 28, township 1, block 81, by said W. P. Paschal, stated both that he was an actual settler upon and had settled upon said section, and that he would do so within ninety days, said application to purchase said section being hereto attached; that at the time said Paschal applied to purchase on the 18th day of May, 1906, said above surveys had been duly and legally classified, appraised, and

advertised; that afterwards, on June 26, 1906, all of the above-named lands were awarded by the commissioner of the land office to W. P. Paschal, by virtue of his application to purchase; that attached hereto is affidavit of settlement made by said Paschal, which may be introduced in evidence, the facts therein stated not being admitted; that on May 24, 1909, J. T. Robison, commissioner of the land office, on each application of purchase made by said Paschal, indorsed the following, 'Land forfeited for failure to reside thereon as required by law;' that, upon the forfeiture of said land so sold to Paschal, the same were awarded to Mrs. I. D. Miller, *after due and legal advertisement and appraisement, and notice of her filings to the county clerk of El Paso county, Texas, and all prerequisites of sale were followed by the commissioner of the land office and by her and by both were complied with.*"

[7] The certified copy of the application to purchase section 28 (Paschal's home section) attached to the agreement shows that the indorsement of the land commissioner as follows: "Land forfeited for failure to reside thereon as required by law. 5/24/09. J. T. Robison, Comr."—was made *on the obligation, and not on the application,* as stated in the body of the agreement. Considering the agreement as a whole, we think, and so hold, that a forfeiture was made by the commissioner in the manner prescribed by law, and, in any event, that appellants upon this record cannot for the first time in this court question the sufficiency of his procedure. In this connection we desire to say, further, that the regularity of the procedure of the commissioner in forfeiting is pertinent only in relation to the one-year statute of limitation. Rev. St. arts. 5458, 5459. This statute was construed by Associate Judge Brown in Slaughter v. Terrell, 100 Tex. 600, 102 S. W. 399, where this language was used:

"In order to ascertain what the Legislature intended by the enactment of this law we must consider the evil that existed and determine what the remedy was to be. Under the law as it previously existed, purchasers of school lands were liable to have their titles attacked by third persons who desire to purchase the land, and such persons might call in question the qualification of the purchaser as well as the performance of conditions prescribed by law; for example, that when the purchase was made the purchaser did not actually reside upon the land, or that he did not intend to make it his home, and thus, although the state recognized his right, the purchaser was constantly exposed to such attacks. This rendered such titles uncertain, and to remedy that evil the Legislature enacted the law now under consideration, which requires that any person who desires to purchase land theretofore purchased by another shall bring his suit to set aside the former purchase within twelve months of the award of it or he will be barred. Clearly this applies only to cases where the state recognizes the validity of the purchase being attacked, and does not apply to a case like the present, where there has been a forfeiture of the former purchase by the land commissioner, and the land again put upon the market. There is no necessity for a suit by a purchaser of forfeited land; indeed, to so hold would be to say that the commissioner had the power to declare the forfeiture, although the award may have been made many years before that time, and the power to sell the land, but that the purchaser at the second sale could not get possession of the land because his suit could not be brought within a year from the award to the first purchaser which had been forfeited. Such an absurd result is a sufficient answer to the contention for that construction."

[8] Under the foregoing ruling it is clear that the fact of forfeiture is material to the right of Miller to prosecute his suit only as relieving him from being barred within the year. Now, the agreement on its face shows that the commissioner has in fact undertaken to forfeit the Paschal purchase; that the award to Miller is the one recognized by the land office; that the commissioner recognizes Miller as the owner, and since the cancellation has refused to recognize Paschal. These facts show that the commissioner has undertaken to forfeit and that the state refuses to recognize the validity of the Paschal purchase, and such purchase is not in good standing in the land office, and under the ruling in Slaughter v. Terrell, this relieves Miller from the bar of the one-year statute.

As to the contention that Miller failed to show entry of forfeiture upon the Paschal account in the land office and notice to the county clerk, this likewise is disposed of by the views expressed above. Furthermore, we have italicized portions of the agreement made by the parties which sufficiently show that proof of these facts was waived.

[9] Another error urged as fundamental, is that the definitions given by the court in its charge of "actual settler" and "continuous residence" are erroneous. If these definitions were incorrect, which is not conceded, the error therein was waived by appellants' failure to make any objection thereto at the proper time. Acts 1913, c. 59, p. 113.

We see no occasion to discuss the rule that no one but the state can raise the question of collusion, if any, between Paschal and Nations. The court submitted no issue in that respect. If, as appellants assert, collusion was injected by the definitions of "actual settler" and "continuous residence," then such error arose in the charge, and by their failure to object to the definitions appellants waived the same.

Upon the views expressed we are of opinion that none of the contentions made by appellants in their original brief or their motion for rehearing are well taken. We

therefore adhere to the order of affirmance and overrule the motion.

If appellants desire to file a second motion for rehearing, 15 days are granted in which same may be filed.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes