## METROPOLITAN LIFE INS. CO. v. TESSIER.

### No. 2964.

Court of Civil Appeals of Texas.
El Paso.
March 8, 1934.

Rehearing Denied April 5, 1934.

R. A. D. Morton and H. D. Stringer, both of El Paso, for appellant.

M. Scarborough and Potash & Cameron, all of El Paso, for appellee.

WALTHALL, Justice.

In December, 1923, appellant, Metropolitan Life Insurance Company, issued to the Southern Pacific Company, a group life insurance policy providing group insurance on the employees of such company and its subsidiaries. The policy provided that all premiums thereon should be paid by the Southern Pacific Company, to the said insurance company issuing the policy, and that a certificate showing the insurance protection to which each employee is entitled would be issued, and that such insurance should be in force only until the end of the month in which employment terminated; the policy provided that certain benefits would be paid to any employee insured thereunder, who "has become totally and permanently disabled as the result of bodily injury or disease so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit." The certificate issued under said policy (and to Tessier in this case) provided:

"Any employee shall be considered as totally and permanently disabled who furnishes due proof that as a result of bodily injuries suffered, or disease contracted while his insurance was in force and prior to his sixtieth birthday, he is permanently, continuously and wholly prevented thereby from performing any work for compensation or profit."

Appellee, Tessier, brought this suit against appellant, Metropolitan Life Insurance Company, on a group insurance policy issued to his employer, Texas & New Orleans Railroad Company, a subsidiary of the Southern Pacific System, to recover the certain benefits provided to be paid as such employee under said policy. He alleged that within the times mentioned in the insurance policy, by reason of an accident while working for the Texas & New Orleans Railroad Company, he had to have his foot cut off three inches above the ankle, and that by reason thereof he was to-

tally and permanently disabled, within the terms and provisions of the policy.

Appellant answered by general denial, stated that it had issued group insurance as above, and specially denied that appellee had suffered total and permanent disability within the purview and meaning of the policy.

The case was submitted to a jury on special issues and on the jury's findings the court entered judgment for appellee for the then accrued payments under the policy. The court overruled appellant's amended motion for a new trial, and appellant duly prosecutes this appeal.

### Opinion.

At the close of the evidence appellant submitted a special charge requesting the court to instruct a verdict in its favor on the ground that the undisputed evidence showed that appellee was not totally and permanently disabled within the meaning of the policy. The court refused appellant's request for peremptory instruction and submitted the issue to the jury and appellant submits error.

Appellant also duly filed motion for judgment non obstante veredicto, and set up as ground in its amended motion for new trial, that there was no evidence to sustain the jury's finding No. 4, to the effect that as a result of the injury to his right leg, appellee became totally and permanently disabled so as to be prevented from engaging in any occupation and performing any work for compensation or profit.

We will discuss these issues together.

The evidence showed Tessier to be twenty-five years of age; had studied up to the senior year in high school; had a year in the school of mines, a part of the Texas University; other than the injury to his leg he had been in good health, a strong, healthy man; about five feet ten and one-half inches in height, and weighs about 170 pounds; has a good mind. Prior to the accident he had been employed by the Texas & New Orleans Railroad Company for about two years in the bridge and building department and that while so employed had his foot run over by a box car and as a result of such injury it was necessary to have his right foot amputated three inches above the ankle. He was in the hospital some three weeks, was then confined to his bed for some six weeks; was on crutches for about four months and then secured a wooden leg, or reducing peg (as appellee expressed it).

Other than the amputation of the leg, the evidence does not show that appellee sustained any injury resulting therefrom or lack of capacity to work from the accident. In addition to bridge and building, the evidence shows that appellee had done some work in house painting and as automobile machinist. For about a week before the trial of this case appellee, after a physical examination, had been enlisted "on special dispensation," in the Civilian Conservation Corps, engaged in the federal reforestation program, at a compensation of $30 per month. The Civilian Conservation Corps seems to be a project of the United States government instituted for the purpose of relieving unemployment and giving men an opportunity to obtain the bare necessities of life. Such employment evidently is temporary, and is not an occupation, trade, or profession, within the contemplation of the policy or the certificate as a sufficient test or conclusive of one's physical ability to perform work for compensation or profit. As said by appellee, the amputation of the leg three inches above the ankle is a permanent injury. But the provision of liability in the policy is conditioned upon the result of such injury as incapacitating appellee from performing any work for compensation or profit. The evidence shows only the injury, the amputation of the leg three inches above the ankle. The fact that appellee looked for jobs and found none is no evidence that he would not have been able to perform the job had he found one.

That the amputation of the leg; the extent of the injury shown by the evidence, totally and permanently disables appellee from engaging in any occupation, and from performing any work for compensation or profit, while a most unfortunate and irreparable loss, would be contrary to our common observation and experience, and a conclusion as to a result from such injury, without any evidence to support such conclusion. As said by Judge Sibley, Circuit Judge of the Circuit Court of Appeals, Fifth Circuit:

"It is common knowledge, that a man with only one arm or leg, if not otherwise incapacitated, may do much valuable work and engage in many gainful occupations." Metropolitan, etc., v. Foster, 67 F.(2d) 264, 266.

Appellant and appellee each refers us to the case of Metropolitan Life Insurance Company v. Barela (Tex. Civ. App.) 44 S.W.(2d) 494, as in point in the instant case. It may be in point as to some of the definitions discussed in that case, but we think it is not in point on the facts now under consideration, that is, whether there was any evi-

dence to justify the submission of the issue of incapacity to the jury. In that case after Barela, an employee in the railroad machine shops, as a machine helper, had recovered from the injury to his hand which had been partly amputated, he returned to his former employment and worked, more or less handicapped and with some difficulty, for two years, and received wages, and was let out only when the railroad company reduced its force by reason of the depression. Here the evidence does not show any effort of appellee to perform any character of labor and was hindered by reason of his incapacity to work.

As we construe the policy requiring payment for total disability, it is an insurance, not against loss of income, but against loss of capacity to work for compensation or profit.

The policy here insures against permanent and total loss of capacity. "Total" disability is in contradistinction to "partial" disability. The one cannot, by mere construction, be made to cover the other.

Other propositions suggest error occurring on the trial, but the view we take of the evidence, as above expressed, renders unnecessary a discussion of them.

The case is reversed and here rendered for appellant.

### On Amended Motion for Rehearing.

Appellee submits that this court erred in holding, as a matter of law, that appellee was not totally and permanently disabled. The suggestion is, as we understand it, that the jury having found total and permanent disability, this court is bound by the verdict of the jury. As we said in the opinion, "other than the amputation of the leg, the evidence does not show that appellee sustained any injury resulting therefrom or lack of capacity to work from the accident." We also said that to hold that total and permanent disability would result from the amputation of the leg alone would be contrary to our common observation and experience and a conclusion as to a result without evidence to support it. Should the rule be as suggested by appellee, it would be necessary only to show the loss of the leg, and the result of total disability would follow as a matter of law, and this court would be bound by the finding.

The Supreme Court in Choate v. Ry. Co., 90 Tex. 82, page 88, 36 S. W. 247, 37 S. W. 319, on motion for rehearing, discusses the question presented. We refer to the case; also Nations v. Miller (Tex. Civ. App.) 212 S. W. 742; Texas & Pacific Ry. Co. v. Rodgers et al. (Tex. Civ. App.) 42 S.W.(2d) 486; Clem v. Fulghum (Tex. Com. App.) 58 S.W. (2d) 15.

We do not think we are in conflict with Great S. L. I. Co. v. Johnson (Tex. Civ. App.) 294 S. W. 675, or Amarillo Mutual Benev. Ass'n v. Franklin (Tex. Com. App.) 50 S.W. (2d) 264. In the cited cases the evidence went far beyond the fact of the injury. In the Johnson Case the evidence showed and the court said the fact that Johnson had made a long, continuous effort to earn compensation and to engage in a gainful occupation was a complete demonstration of his inability to do so. Here there was no effort at any kind of labor shown, nor evidence that the sole loss of the leg would wholly disable appellee.

The motion is overruled.