## APPEL v. LA VELLE. (No. 7732.)

Court of Civil Appeals of Texas. San Antonio. March 16, 1927.

Estoppel ⬅68(5)—Widow, sole heir and administratrix of deceased vendee, held entitled to deed under purchase contract only as administratrix, and not as individual.

Where widow, who was also her husband's sole heir and administratrix, swore in application for letters of administration that certain property was part of husband's estate, *held* that, in suit for specific performance under purchase contract, she was entitled to deed only as administratrix, and not as individual.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by C. B. Appel against A. La Velle. Judgment for defendant, and plaintiff appeals. Affirmed.

George Powell, of San Antonio, for appellant.

Jack Horner, of San Antonio, for appellee.

SMITH, J. George Appel, a soldier in the United States army, contracted tuberculosis,

and on that account was retired upon a pension of $30 a month. He also received from the government an adjusted compensation certificate in the amount of $600. Shortly afterwards he entered into a written contract with Mrs. A. La Velle for the purchase of a lot owned by her on Carson street, in the city of San Antonio. The agreed consideration for this property was $1,000, upon terms of $100 cash and $10 per month, with interest. It was provided in the contract that:

"It is further agreed and understood that, when the amount of one-third of the purchase price is fully paid, the contractor herein, Mrs. A. La Velle, her heirs, assigns, administrators, or executors shall make, execute, and deliver a deed conveying said property, retaining a vendor's lien against the same to secure the payment of the balance of the purchase price thereof, payable in the same manner and upon the same terms as the same are shown in this contract, if requested to do so by the contractee or any one coming after him."

Appel made the cash payment and met the monthly installments as they matured, up to the time of his death, which occurred in March, 1925. After purchasing the lot Appel built a small dwelling house at a cost of about $500, and made his home therein until he died.

Appel was alone in the world at the time he purchased and improved the lot in controversy. He was unmarried, had "no child nor children, or their descendants, no father or mother, no brothers and sisters, or their descendants." And when he built the house on the lot in question he moved in and set up housekeeping alone. His illness progressed; he seemed to realize that his end was near, and so on January 17, 1925, he was the subject of an interview in a local daily newspaper, in which he was quoted as saying, among other things:

"My days are about over, and all I want is some one to take care of me until they sound taps over this body of mine. I've got a nice little home here, an income from the government, and my adjusted compensation policy that I will turn over to any woman that will just be a buddy to me until the end.

"I don't care about the woman's financial condition or what it might have been; if she is down and out, it'll suit me all the better. I never knew anything but hard work all my life, and I haven't anything to boast of, but if what there is of it could help somebody that's down, I would feel that my mission in life had been accomplished.

"I don't want any young kid that wants to hang around for material gain, and I don't want to raise some young flapper, but a sensible woman to marry me and secure legal right to all my earthly belongings."

Among those reading this interview was Cora Bell Crouson, who, in response thereto, called upon Appel on January 18, and married him on January 20, 1925. She testified upon the trial that:

"After reading the advertisement on the 18th of January, 1925, I called on Mr. George Appel, at 2017 Carson street, and showed him the advertisement and asked him if he had the same published and he said, 'Yes'; and he made to me an offer of marriage, stating to me that if I would marry him, he would settle upon me and give to me at our marriage, his property, real and personal, mentioning his homestead in the city of San Antonio, Bexar county, Tex., at No. 2017 Carson street, being lot No. G, in city block No. 1169, situated on the north side of Carson street, value $1,000; also his adjusted compensation policy of the value of $600, and his income from the government of the value of $30 per month. I consented then to the terms of his offer of marriage, and accepted same, and agreed to marry him, and he and I were married as above stated, and lived together as husband and wife until his death, which occurred on March 10, 1925, in San Antonio, Tex., and I took care of my husband, nursed, and waited upon him all through his sickness and until his death. At our marriage, my husband, George Appel, gave to me and settled upon me his property, his home at 2017 Carson street, his adjusted compensation policy and insurance, and income from the United States government, and placed the same in my actual possession as owner, in accordance with our marriage contract. My husband was a soldier in the United States army, but was sick and disabled and was honorably discharged from the army on that account. After our marriage, Mr. Appel and I resided at 2017 Carson street, San Antonio, Tex., our homestead, until his death in March, 1925."

After Appel's death, his wife, Cora Bell Crouson Appel, continued the installment payments upon the property in controversy until more than one-third of the total purchase price of the property had been paid.

A few months after Appel's death his widow made application in the probate court for letters of administration upon her husband's estate, alleging that at the time of his death her husband was seized and possessed of real and personal property of the probable value of $1,400, and was indebted in the sum of $700 or $800. In the inventory and list of claims sworn to and filed by Mrs. Appel the property now in controversy, as well as the furniture in the home, was listed as the separate property of the deceased husband, and the balance due upon the purchase price of the lot, amounting to $600, was listed as a claim against said separate estate. It was further declared that there was no community estate. Upon her application Mrs. Appel was named administratrix, and letters were duly issued to her. The estate is still in process of such administration; it has not been closed; and its assets and debts remain as disclosed in Mrs. Appel's application for letters.

Mrs. Appel brought this suit against Mrs. La Velle to enforce specific performance of the contract between George Appel and Mrs. La Velle, by requiring the latter to execute and deliver a deed conveying the lot in con-

troversy directly to, Mrs. Appel, in her individual capacity. Mrs. La Velle answered that she was ready to execute and deliver a deed conveying the property to such person as may be found to be entitled thereto. In accordance with this pleading, Mrs. La Velle tendered a deed to Mrs. Appel, not as an individual, but as administratrix of the estate of her deceased husband, in consideration of a properly executed obligation of Mrs. Appel, as such administratrix, to complete the payment of the installments still due upon the property, as provided in the original contract, with the retention of the vendor's lien, as also provided in that contract.·

Upon a trial without a jury, the court below rendered judgment in favor of Mrs. La Velle in accordance with her pleadings, denying Mrs. Appel's prayer for a conveyance of the property to her in her individual capacity, but requiring the conveyance to be made to her in her representative capacity. Mrs. Appel has appealed.

The judgment must be affirmed. The evidence is such as to warrant the implied finding of the trial court that the right of George Appel to specific performance of the contract had not passed to appellant at the time of her husband's death. In connection with her application for letters appellant swore that the property was a part of the separate estate of her husband, whose estate ,was chargeable with the obligation to pay the balance of the purchase price therefor. The estate, of which this property was a part, was and is yet in process of administration. Appellant's individual interest therein was not acquired by purchase, but rests solely upon heirship, and must be obtained through distribution in the orderly process of administration.

This conclusion obviously settles the appeal, and the judgment is affirmed.