## AMERICAN SODA FOUNTAIN CO. v. WELLS. (No. 1999.)

Court of Civil Appeals of Texas. El Paso. April 7, 1927.

Rehearing Denied April 28, 1927.

1. Corporations ⬅432(12)—Evidence held to show district sales manager's authority to employ salesman suing for commissions.

In salesman's action for commissions, evidence *held* to show authority of defendant's district sales manager to employ plaintiff.

2. Master and servant ⬅80(10)—Evidence held to sustain finding salesman was promised bonus if sales exceeded certain amount.

In salesman's action for commission and bonus, evidence *held* to sustain finding that plaintiff was promised a bonus of $500 if sales through his branch exceeded a certain amount.

3. Master and servant ⬅80(13)—Whether defendant accepting irregular orders obtained by salesman was authorized to cut salesman's commissions accordingly held for jury.

In salesman's action for commissions, evidence *held* for jury on question whether plaintiff's contract permitted defendant accepting irregular orders for less than regular price to cut plaintiff's commissions accordingly.

4. Appeal and error ⬅719(1)—Error not assigned cannot be considered by appellate court unless fundamental.

Court of Civil Appeals cannot consider an error not assigned unless it is fundamental.

5. Appeal and error ⬅672—Error is not fundamental if it necessitates examination of entire statement of facts.

An error which necessitates an examination of the entire statement of facts is not fundamental.

6. Appeal and error ⬅719(1)—Appellee's suggestion of delay and motion for affirmance and damages opens entire record and requires reversal for any error disclosed though not assigned.

Appellee's suggestion of delay and motion for affirmance, with damages, opens the entire record and requires a reversal of the judgment for any error disclosed by the record, whether assigned or not.

7. Trial ⬅350(3)—Interest on salesman's recovery of commission from due date held properly allowed, though no issue of interest was submitted to jury.

In salesman's action for commission, interest was properly allowed on aggregate amount found due from due date of such amounts until date of judgment, though no issue was requested or submitted to jury or finding made thereon.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by Joe R. Wells against the American Soda Fountain Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Burgess, Burgess, Chrestman & Brundidge, M. N. Chrestman and L. E. Elliott, all of Dallas, for appellant.

Crane & Crane, of Dallas (Edward Crane, of Dallas, of counsel), for appellee.

WALTHALL, J. Appellee, Joe R. Wells, brought this suit against the American Soda Fountain Company, a corporation, with its principal office at Boston, Mass., manufacturer of soda fountains, carbonators, and soda fountain equipment and appliances, to recover an alleged balance of $1,070.51, due him as traveling salesman on commission, operating in Texas, Arkansas, and Oklahoma, in selling appellant's merchandise.

The suit was based upon an alleged parol contract made on or about September 1, 1918. It is alleged that appellant agreed to pay appellee a commission of 10 per cent. of the selling price of all soda fountains and superstructures, and 12 per cent. of carbonators, hot soda equipment, and other soda fountain equipment, on all orders procured by him and accepted by appellant; that appellant would advance appellee money necessary to defray traveling expenses and reasonable sums weekly to be agreed upon from time to time, amounts advanced to be credited upon commissions earned, settlements to be made on the 1st days of March and September of each year; that about September 1, 1919, appellant agreed give to its salesmen who had been in its employ for a year prior thereto, which included appellee, a bonus of $500 for the year beginning September 1, 1919, if the annual sales through the Dallas office for the year exceeded $100,000; that the sales for that period exceeded $100,000; that appellee procured numerous orders for appellant's merchandise, all of which were accepted by appellant, specifying the sale orders on each of which the 10 per cent. and the 12 per cent. commissions are based, beginning with September 1, 1918, and ending with October, 1920, giving dates, amount of each sale item, to whom sold, and the commission on each item, the exhibits disclosing that the aggregate amount of the sales made by appellee and accepted by appellant was $92,221.20, and the aggregate amount of the commissions was $9,292.46; the payments made to appellee by way of advancements amount to $8,221.96, leaving a balance due of $1,070.51; that appellant has failed, on demand, to pay the said amount and the $500 bonus.

In view of some of the propositions, we will quote some of the verbiage of appellant's answer. Appellant by its second amended answer, on which it went to trial, answered by general denial of "each and every allegation in plaintiff's petition contained, except as hereinafter specially admitted"; that for special answer herein, "defendant says that plaintiff was employed by defendant as traveling salesman on or about January 15,

---

1918, as selling representative in the states of Oklahoma and Texas upon the following terms and conditions," then states the conditions to be: "Defendant" (appellant) reserved the right to add to or reduce appellee's territory; appellee agreed to devote his entire time and best service in selling goods offered by "defendant" (appellant) and in making settlements in his territory; upon all orders taken by appellee at full regular price and accepted and filled by the appellant, "defendant (appellant) would pay plaintiff (appellee) a commission of 10 per cent. on apparatus and 12 per cent. on carbonators, the said commission to be due and payable when not less than one-third of the purchase price of said goods has been paid by the customer or purchaser"; that "defendant" reserved the right to accept or reject any orders taken at less than "defendant's regular price on such goods ordered, and in such event the defendant to pay plaintiff less than the commission above provided, but in no event should plaintiff's commission be less than 5 per cent. upon any orders which are accepted and filled by defendant; that defendant would advance plaintiff such amount as agreed upon per week for plaintiff's actual traveling expenses, such advances to be charged to plaintiff's account against the commissions which may thereafter become due to plaintiff;" that appellee would keep an itemized daily account of his expenditures, to be submitted to appellant weekly, and subject to appellant's approval; all advances above amount earned were in the nature of a loan by appellant to appellee and to be repaid; that appellee "entered into the services of defendant" under the terms and conditions stated, took orders and submitted same for approval; that appellee procured certain orders less than the regular price and same were declined, except on the agreement of a less commission than 10 or 12 per cent. would be fixed, as the case would be under the commission agreement, then setting out certain orders on which a 5 per cent. commission was allowed, and certain other orders on which no commissions were allowed.

By way of set-off appellant alleged that under said contract of January, 1918, it advanced to appellee the total sum of $10,050.79, and that during the term of his employment appellee earned the total sum of $8,008.30, leaving a balance in appellant's favor at the end of his employment of $2,042.49, which it sought to have set off against any recovery in favor of appellee.

The case was tried with a jury and submitted on special issues, and on issues submitted the jury found, substantially, as follows:

On issues 1 and 2, that appellee and appellant entered into a contract of employment on or about September 1, 1918, as alleged by appellee, and not on or about January 15, 1918, as alleged by appellant. On issues 5 and 6 the jury found that appellant paid to appellee in salary, commissions, and expenses from September 1, 1918, to termination of employment, $8,427.97, and that during said time appellee earned in commissions on sales the total sum of $9,233.26. On issues 7 and 8 the jury found that appellant agreed to pay appellee a bonus of $500 should the sales through the Dallas office exceed $100,000 during the year beginning September 1, 1919, and ending September 1, 1920, and that during that period the sales exceeded said sum. The record does not show that appellant urged any objection to the issues submitted to the jury, nor does the record show that appellant requested the submission of any issue. On the verdict the court entered judgment for appellee on said findings to principal sums for $1,305.29, and 6 per cent. interest thereon from November 4, 1920, to date of judgment on February 19, 1926, thus making the total aggregate judgment $1,718.36.

Appellant moved the court to set aside the jury's verdict on the ground that the answers to the issues were immaterial and that no privity of contract was shown. The motion was overruled. Appellant moved for judgment in its favor on the same grounds as above. The motion was overruled. Appellant then presented its objections to the judgment on the ground that the evidence showed no privity of contract between appellee and appellant sufficient to bind appellant, which objections were overruled. Appellant filed its motion for a new trial based on each of said grounds, which motion the court overruled, and appellant duly excepted.

## Opinion.

The undisputed evidence shows that George K. Butcher was appellant's sales manager for appellant's Dallas office, covering Texas, Oklahoma, Arkansas, and Louisiana. Whatever contract of employment appellee had it was made with Butcher. Butcher's employment contract with the appellant is of date March 1, 1912, to be continuous, but terminable by either party upon notice. His contract extended through the time involved here. The contract with Butcher was executed, on the part of appellant, with I. F. North, its general manager. The features of Butcher's contract with North, if deemed material to the issues here, are, substantially, to the following effect: Butcher was made the sales manager for appellant's Dallas office; he was to be paid a commission upon orders taken by him or his assistants in his territory, accepted and filled by appellant, unless otherwise agreed at the time of the acceptance of the order; appellant reserves the right to accept or reject any irregular orders of Butcher or his assistants, but, if accepted, reserves the right to reduce Butcher's commission upon giving notice. Butcher's territory includes the states above named. Butcher is to employ all salesmen that may be necessary; the number and their compensation is subject to

North's approval in writing. Appellant company was to advance to Butcher personally $40 per week and his traveling expenses to be charged against his account and deducted from his earned commissions. The contract also reads: "We will also advance you the salary and expenses of salesmen which may be authorized by us." Itemized expense accounts of Butcher and assistants were to be made and charged against Butcher's account and deducted from earned commissions; appellant was to pay store rent, pay the bookkeeper and porter. There were parol modifications of the Butcher contract with appellant, as to weekly drawing account, but we think not material to any of the issues here.

[1] Appellant's first proposition suggests that no authority is shown in Butcher to bind appellant to pay appellee anything and no privity of contract is shown between appellee and appellant. The proposition is not tenable under appellant's pleading, nor under the undisputed facts disclosed by the record. A reference to appellant's answer upon which the case was tried shows that appellant pleaded general denial of each and every allegation in appellee's petition, except such as were specially admitted, then follow repeated allegations such as "defendant says that plaintiff was employed by defendant as traveling salesman," stating the terms of his employment as appellant conceives them to be, with certain stated rights reserved to appellant, and that upon orders taken by appellee at regular prices and accepted and filled by appellant, "defendant would pay plaintiff a commission," stating the commission it would pay; that "defendant would advance plaintiff such amount as agreed upon per week for plaintiff's actual traveling expenses, such advances to be charged to plaintiff's account against the commissions which may thereafter become due to plaintiff"; and, again, that "plaintiff entered into the services of defendant," under the terms stated, and took orders and submitted same for approval. Appellant's special answer interprets its contracts with Butcher, and adopts for itself the employment contract Butcher made with appellee, as appellant conceives that contract to be. Aside from appellant's answer the facts unmistakably show, we think, a privity of contract with appellant through Butcher, its sales manager, of the Dallas office. Appellee had no written contract with either Butcher or with any of appellant's officers or agents at its Boston office. Without quoting the evidence it is made to appear with reasonable certainty, we think, that all reports were sent to and settled through the Boston office. In the correspondence between appellant's general manager, Mr. North, and its Dallas manager, Mr. Butcher, it is made to appear that North had knowledge of appellee's employment during the period of his employment and approved it, and directed that advancements of money be made to appellee on his commissions account and on his expense account. At the time appellee was employed he resided at Fort Worth, and Butcher's correspondence to appellee from Dallas, in soliciting appellee's services as salesman, shows that he was acting in behalf of appellant. There is nothing in the record, either in the pleading or proof, indicating that in the matter of appellee's employment Butcher was acting as an independent contractor. Appellant refers us to many authorities to sustain its contention, but, without reviewing them here, we have concluded that they have no application in view of appellant's answer and the evidence on the matter presented on the proposition.

[2] We think appellant's second proposition complaining of the seventh finding of the jury to the effect that appellant agreed to pay appellee a bonus of $500 should the sales through the Dallas office exceed $100,000 during the year beginning September 1, 1919, and ending September 1, 1920, should be overruled. Appellee testified, in substance, that he asked Butcher for a larger commission than he was then getting on account of his increased expenses of living; that Butcher replied that it was then too late to do that, that the contracts were already out, "but that he would go to Boston and get from the company. On his return from Boston, he said that Mr. North, the president of the company, was not in position to authorize an increase in the middle of the year on our commission, but that he would, in addition to our commission—that we had a good year, and that if we would reach a total of $100,000 of stuff shipped through the Dallas branch, that he would give us an extra bonus of $1,000; you will get $500. * * * The sales through the Dallas branch ran over $100,000 for the year ending September, 1920."

Witness Rouse said he heard a general talk about a bonus—did not know whether it went through or not. In a letter of August 27, 1920, from Butcher to North, after stating that appellee had complained about the commission arrangements, and saying that appellee should have a better year than the last, and the price at which he could get a Mr. Clark per week, these words are used:

"I believe both men will work the year out, and both will have a bonus coming to them at the end of the year on the 10 per cent. basis. I figure that both of them will sell about $50,000 during the coming year."

The letter stated that Butcher wanted North's approval, that both men were worth the salary, and requested an approval by wire. North immediately wired his approval. The jury found in favor of appellee on the issue, and we think the evidence is sufficient to sustain the finding.

[3] Under propositions 3, 4, and 5 it is insisted that appellee having introduced in evidence the contract between Butcher and appellant, which contract provided that appel-

lant reserved the right to accept or reject any irregular orders "you or your assistants may take," and, if accepted, may reduce such commissions to an amount not less than 5 per cent. of the net amount, upon giving Butcher notice to that effect, and Butcher having such notice, the orders specified in the propositions, some seven in number, being irregular, that is, under the special prices, appellee was bound by the terms of the Butcher contract, and appellee's commissions on said sales would be as reduced by appellant.

Appellee testified, however, in substance, that under his contract with Butcher his commissions on the articles embraced in said orders would be 10 per cent. on some of them and 12 per cent. on others; that Butcher submitted to him a contract in writing containing, in effect, the same as in Butcher's contract with appellant on the reduction of the commission, but that he refused to sign the contract with the reduction clause, as above, and quit the employment, but was induced to return to work on Butcher's assurance that the contract as made with him would stand; that he never agreed to such reduction of his commission on orders secured by him. Without stating the testimony of appellee on the sale of each of the several orders, it is to the effect that he made the collection and forwarded it in to Butcher and never heard anything more about it until several months later, and after he had left the company. The statement of facts shows that on September 15, 1920, Mr. Rouse, the bookkeeper at the Dallas office, made reports to the Boston office from the books in the Dallas office at the direction of Butcher. The report shows that on the items embraced in the several propositions above, sales made by appellee, a commission of 15 per cent. is credited to the Dallas office. Beverly M. Chittick, assistant treasurer of appellant, testified by deposition and, among other things, said:

"The only report we have from Mr. Butcher covering the sales for 1918, 1919, and 1920 are reports sent by him in his letter of September 15, 1920, covering the sales of the Dallas office, 1918 and 1919."

In a letter from Butcher to Mr. North of date November 6, 1920, occurs this statement, after a lengthy statement of the strained relations at that time between Butcher and appellee:

"We will owe Mr. Wells about four or five hundred dollars, on prospective commissions. Mr. Wells has been working under an agreement about as per the attached, which was a personal agreement when he went to work, although we never had a signed contract with him; however, he understands he is to make settlement on the 10 per cent. basis."

It seems to us that appellee had been serving as salesman under a parol agreement with Mr. Butcher, the manager of the Dallas branch of appellant's business, since appellee first went to work, and after refusing to sign a contract of employment with the reduction feature, and with Butcher's knowledge that appellee understood that settlement would be made on the larger per cent. commission; that appellee would not, as matter of law, be confined to the reduction feature of the contract between Butcher and appellant. The jury found for appellee on the fact issue.

Appellee alleged that the sales he made for appellant during his employment and accepted aggregated $92,221.20, that under the terms of his contract his commissions amounted to $9,292.46, that appellant had paid him by way of advances on commissions the sum of $8,221.95, leaving a balance due and owing of $1,070.51, and attached to his petition an itemized statement of sales showing the above and for which he sued. On the trial appellee testified to the correctness of the statement, saying, in substance, that he and appellant's bookkeeper, Mr. Rouse, had checked his (appellee's) figures against the ledger and that there was no difference between the two. He stated also that he had attached to his petition the statement as above, showing the cash advanced to him, stating the amounts, as in the itemized statement, were the figures he and Rouse had gotten from the ledger, covering every payment of every kind.

On the following day appellee asked to correct his statement of the previous day. He then said:

"That (apparently referring to the statement) was figures I had compiled, and he (Rouse) confirmed before I quit; that after I quit, I received a check for $500. The $500 is not included in that $8,221.95; that is, in addition to that; that's what I drew for salary and expenses, and the eighty-two hundred, whatever it was, that doesn't include the $500. The $8,221.95 represents the figures given to me by Mr. Rouse; the $8,221.95 represents the amount given me by Mr. Rouse, plus the $500. You should add the $500 to the $8,221.95; in other words, it should show that the company advanced me $8,721.95."

To the questions submitted as to the amount of money appellant paid appellee in salary, commission, and expenses during appellee's employment, the jury answered, $8,427.97. In response to the question as to the amount of money appellee earned in commissions on sales, the jury answered, $9,233.26. The court in the judgment recites that "the jury has found that defendant is indebted to the plaintiff in the sum of $805.29" and added that amount to the $500 found by the jury on the issue of the bonus and rendered judgment for the two amounts, and interest.

[4] Appellant, in its sixth proposition, insists that it is fundamental error to render judgment for commissions in the sum of $805.29. The matter complained of under this proposition was not called to the attention of

the trial court, nor is there any assignment of error raising same. It is well settled this court cannot consider an error not assigned unless the error is fundamental. Roberson v. Hughes (Tex. Com. App.) 231 S. W. 735; Waggoner Estate v. Sigler, etc. (Tex. Com. App.) 284 S. W. 921; Read v. Glidden Stores, 293 S. W. 244, by this court.

[5, 6] The proposition presents the error complained of as fundamental. It is also well settled that an error which necessitates an examination of the entire statement of facts is not fundamental. Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Ford & Damon v. Flewellen (Tex. Com. App.) 276 S. W. 903; Egan v. Lockney Farmers' Co-op. Soc. (Tex. Com. App.) 284 S. W. 937. However, it is also the settled rule that a suggestion of delay by the appellee and motion for affirmance with damages opens the entire record and requires a reversal of the judgment for any error disclosed by the record whether assigned or not. See cases 1 Michie Digest, 942, 943. This suggestion of delay and motion to affirm with damages is made by appellee, and we will therefore consider the sixth proposition upon its merits.

Under the corrected statement of appellee as to the advancements made to him by appellant, adding thereto the $500 admitted in open court to have been paid to him after he quit the service of appellant, we think the jury's fifth finding is excessive in amount by some $293.98. Appellee alleged in his pleading that a balance was due him on commissions of $1,070.51, and so testified, but afterwards corrected his testimony and admitted an additional payment of $500, thus reducing his claim on the item of commission to $570.51. Findings, then, 5 and 6, on commissions due appellee, would seem to be $629.71 instead of $805.29, as in the judgment, and the two items of commissions and bonus would be $1,129.71, instead of $1,305.29, as in the judgment.

[7] No issue of interest was submitted to the jury, and none requested to be submitted, and no finding of interest was made by the jury, but the court entered judgment for interest on the aggregate amount found to be due, from the time said amounts were found to be due until the date of the judgment. Appellant assigned error to the judgment for interest prior to the trial. This matter is decided adversely to appellant by the recent opinion of Judge Pierson in Ewing v. Wm. L. Foley, 115 Tex. 222, 280 S. W. 499, 44 A. L. R. 627.

The questions presented and not discussed were determined by the jury. We have reviewed them and they are overruled.

For reasons stated, the judgment of the trial court is reversed and judgment here rendered for appellee in the sum of $1,424.38, with interest thereon at the rate of 6 per cent. per annum from the date of the rendition of the judgment in the trial court.

Reversed, and judgment rendered.

### On Motion for Rehearing.

Appellant, in its motion for rehearing, points out a mathematical error in our calculation of the amount due from appellant to appellee of $59.20. We have concluded that our calculation is error to the amount stated. Without restating here the several amounts from which the judgment is calculated, we say that the judgment here rendered for appellee, principal and interest to date of the trial, is the sum of $1,333.65, with interest thereon at the rate of 6 per cent. per annum from the date of the rendition of the judgment in the trial court.

For the purpose of the correction as above, the motion for rehearing is granted, but is in all other respects overruled.